704

SAN LORENZO TRADING, INC., y OTROS, demandantes y recurridos, *v.* RAFAEL HERNÁNDEZ BARRERAS, JOSÉ A. GONZÁLEZ CARRIÓN, JOSÉ FIGUEROA y ÁNGEL MERLY, demandados, y peticionario el último; RAFAEL HERNÁNDEZ BARRERAS y OTROS, demandantes, *v.* SAN LORENZO TRADING, INC. y OTROS, demandados.

*Número:* O-82-616    *Resuelto:* 26 de octubre de 1983

*Arnaldo Sánchez Recio*, abogado del peticionario Ing. Ángel Merly; *Enrique Nassar Rizek*, de *Figueroa & Nassar*, abogado de la recurrida San Lorenzo Trading, Inc.; *Raúl Tirado Rodríguez*, abogado de los demandados Rafael Hernández Barreras, José A. González Carrión y José Figueroa.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

La solución del presente recurso exige, a modo de repaso, que examinemos el concepto del testigo, que es perito, y cuál es su función básica. Cumplida esa encomienda, precisa explorar respuestas a las siguientes interrogantes: ¿Qué lo distingue de un testigo ordinario? ¿Qué

categorías son susceptibles de establecerse? ¿Qué criterios conlleva y a qué retribución es acreedor por su comparecencia a una deposición?

I

El 3 de agosto de 1979 José A. López Madrazo, José R. Bacardí y Luis A. Ciappi compraron a Rafael Hernández Barreras, José A. González Carrión y José Figueroa acciones corporativas emitidas y en circulación de San Lorenzo Trading, Inc. En demanda formulada en el año 1981 a nombre de San Lorenzo Trading, Inc. y de ellos mismos alegaron que la suma de $550,000 asignada a las acciones se fijó a base de dos inmuebles de 4.715 y 3.158 cuerdas valorados en $288,667.50 y $261,232.50 respectivamente. Adujeron que al medir la finca de 4.715 cuerdas resultó tener una cabida de 2.75 cuerdas que valen sólo $206,355.86. Reclamaron la diferencia de $82,311.64. (¹)

Trabada la controversia los demandantes avisaron la toma de una deposición al ingeniero Ángel Merly Pérez, quien en 1976 había hecho un informe de tasación del activo de San Lorenzo Trading, Inc., que incluía la finca de 4.715 cuerdas, cabida que presumió correcta y valoró en $278,000. Admiten que es ésta "[l]a tasación sobre la cual habrá de ser examinado el señor Ángel Merly". Dicha tasación (copia de la cual obra en los autos originales) es "solicitada y pagada para uso y beneficio de San Lorenzo Trading, Inc. a través de Small Business Administration".

Conjuntamente con la citación se le entregó un cheque por $15 para cubrir sus gastos de transportación y dietas de acuerdo con el *Reglamento de Gastos, Viajes y Dietas para Testigos*, promulgado por el Director Administrativo de los Tribunales el 10 de octubre de 1980 conforme la Regla 40.3 de Procedimiento Civil. Merly Pérez se opuso.

---

(¹) Incluyeron otras alegaciones relativas a obligaciones contraídas y no cumplidas por los demandados en el referido contrato jurídico.

Argumentó que no debía ser compelido a comparecer hasta tanto se hicieran efectivos sus honorarios como perito, a razón de $75 la hora, e idéntica suma para su abogado, que le acompañaría al acto de la toma de su deposición.(2) Los demandantes reiteraron su solicitud señalando que la cita y declaración eran como testigo de hechos y no como perito. El tribunal de instancia declaró sin lugar sus objeciones y le ordenó comparecer sin derecho a percibir honorarios como perito. Acudió ante nos mediante *certiorari* y acordamos revisar.

## II

█ Etimológicamente el adjetivo *perito* proviene del latín *peritus, a, um,* y describe a la persona conocedora y versada. En su acepción clásica la definición reconocida y universal —distinguida de su connotación jurídica, procesal y evidenciaria— corresponde al "inteligente, experimentado, práctico en uná ciencia, arte o cualquiera otra materia". *Diccionario de Derecho Privado*, Barcelona, Ed. Labor, 1963, Apéndice, pág. 708; Vox, *Diccionario general ilustrado de la lengua española*, 2da ed., Barcelona, Ed. Spes, 1961, pág. 1277; G. Cabanellas, *Diccionario Enciclopédico de Derecho Usual*, 14ta ed., Buenos Aires, Ed. Heliasta,

---

(2) Adujo también que no era parte en el pleito ni había sido nombrado como testigo. Esta razón no merece elaborarse. No es requisito para la toma de una deposición ser parte o haber sido anunciado como testigo. Véase la Regla 27.1 de Procedimiento Civil.

El otro fundamento de su objeción fue que la información que poseía era materia privilegiada. Tal contención es frívola. No hemos hallado ni en las Reglas de Evidencia —Reglas 23 a 25— ni en ninguna ley especial algún privilegio como el que reclama el ingeniero Merly Pérez. Véase, por ejemplo, la Ley Núm. 12 de 29 de septiembre de 1980, que crea el Colegio de Ingenieros y Agrimensores. 20 L.P.R.A. sec. 731 *et seq.* Además, el argumento es patentemente inmeritorio porque de existir algún privilegio éste sería de su cliente corporativo —y no de él— que es en fin de cuentas quien pretende tomarle la deposición. Consúltense las Reglas 33, 34 y 35 de Evidencia.

En cuanto al reclamo de honorarios para su abogado, en las circunstancias de autos debe descartarse de su faz sin seria ni ulterior consideración.

1979, T. V, pág. 211; *Webster's Third New International Dictionary*, 1971, pág. 800; *The Compact Edition of the Oxford English Dictionary*, 1971, Vol. I, pág. 932. La nota característica que aflora de estas definiciones proyecta la visión de aquellas personas con conocimiento especializado en materias que de ordinario "no son conocidas, con precisión, por el común de las gentes. . . . Perito es, por tanto, la persona entendida, el individuo competente, idóneo, por tener unas determinadas aptitudes y conocimientos, por poseer una adecuada capacidad. Como sinónimos del vocablo perito se utilizan en el lenguaje común los términos experto, especialista, técnico, etc.". E. Font. Serra, *La prueba de peritos en el proceso civil español*, Barcelona, Ed. Hispano Europea, 1974, págs. 1-2. Véanse, 2 *Wigmore, Evidence* Sec. 555 (3ra ed., 1940), págs. 633-635; *Words and Phrases*, "Expert Witness", Vol. 15A, págs. 469-471.

La actividad pericial no es exclusiva del mundo jurídico. Abarca el vasto campo de la cultura y el de la dinámica de las relaciones humanas y se desenvuelve en ellos. Incluye el saber proveniente de las ciencias físicas y naturales, las matemáticas, la psiquiatría, psicología, medicina, ingeniería, arquitectura, economía, lingüística, pintura, música, literatura, el arte y otras más. Su legitimidad dimana del reconocimiento que una comunidad concede a determinada persona en atención a su educación, profesión, práctica o aptitudes obtenidas mediante un entrenamiento formal, a título académico, o como consecuencia de la experiencia producto de una ocupación habitual o trabajo sistemático en un área especializada.

Cuando esa sabiduría se aplica a la solución de controversias jurídicas penetramos en la dimensión de la pericia de orden procesal, como uno de los medios de prueba personales auxiliadores al desempeño judicial. "El destinatario de la prueba pericial será siempre el Juez, ante el que se practica dicho medio de prueba." Font Serra, *op. cit.*, pág. 13. Como cualquier otro testigo, la función del perito es dar

a conocer la verdad, derivada de su conocimiento especializado.

La necesidad del testimonio pericial en los procedimientos judiciales fue reconocida por lo menos desde el decimocuarto siglo de nuestra era. En esos días el conocimiento pericial era utilizado de dos maneras diferentes: personas diestras eran llamadas a auxiliar a los juzgadores en sus decisiones o eran seleccionadas como jurados, debido a que su experiencia y entrenamiento las habilitaban para apreciar mejor los hechos. J. Molinari, *The Role of the Expert Witness*, 9 The Forum 789, 790 (1973-74).

En época moderna la ausencia del juez "enciclopédico", esto es, perito o técnico en toda materia a adjudicar desde el estrado, acentúa y justifica con mayor rigor su existencia. Font Serra, *op. cit.*, págs. 21-30.

> La razón de ser de la prueba pericial radica en la imposibilidad de que el juez, por muy hábil y competente que sea, tenga un completo conocimiento técnico en multitud de materias, que cada día van en aumento como consecuencia del perfeccionamiento de la técnica y de la mecánica, lo que determina la necesidad de que personas peritas en la materia puedan ilustrarle, a fin de que su pronunciamiento se ajuste a la realidad material de los hechos, enlazándola con el aspecto jurídico que los mismos presentan. Su fundamento, por tanto, se basa en la fe y credibilidad humana, ya que ante la ignorancia por parte del juzgador en ciertos aspectos materiales debe imperar un principio de confianza en la palabra del hombre que permita asegurar al Tribunal que su fallo se producirá en justicia. J. Sáez Jiménez y E. López Fernández de Gamboa, *Compendio de derecho procesal civil y penal*, Madrid, Ed. Santillana, 1963, T. I, pág. 938.

■ Nuestras Reglas de Evidencia de 1979 recogen esencialmente el marco conceptual expuesto. Así la Regla 53 implícitamente define como perito a la persona que "posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficientes" sobre un asunto. Su cobertura es dilatada. "No sólo cualifican los 'expertos' en

sentido estricto (médicos, científicos, arquitectos, ingenieros, etc.), sino cualquier persona que a juicio del juez que preside la causa tiene alguna preparación o conocimiento especial sobre la materia objeto de la declaración. Aun la experiencia se incluye como criterio." *Reglas de Evidencia para el Tribunal General de Justicia,* Ed. Equity, 1979, Comentarios sobre la Regla 53, págs. 55-56. Como señala Font Serra, "una característica de peculiar relieve de la pericia es que, por regla general, se desecha su vertiente teórica. Lo que importa es su utilidad práctica. Es más, una pericia de carácter teórico tiene valor, en cuanto otra persona pueda aplicarla a situaciones reales. Este sentido teleológico de utilidad es de tal importancia, que se llega a calificar la pericia como actividad de tipo práctico, no porque esencialmente lo sea, sino porque, aun cuando se trate de operaciones científicas o artísticas teóricas, se ven desde un prisma técnico". *Op cit.,* pág. 4.

▬ Aunque las reglas permiten a cualesquiera partes presentar *sua sponte* su propio perito, siguiendo la orientación moderna persiguen estimular el nombramiento del "perito judicial" designado por el tribunal. *Toppel* v. *Toppel,* 114 D.P.R. 16 (1983). Se intenta así "evitar y eliminar la situación [indeseable] de que los peritos sean o se conviertan en testigos particulares de las partes . . . logrando que su comparecencia y testimonio ante el tribunal sea sin endoso previo a cualesquiera de los litigantes". *Urrutia* v. *A.A.A.,* 103 D.P.R. 643, 650 (1975). Desde el punto de vista doctrinal las reglas vigentes cristalizan una postura ecléctica: consagran la pericia como medio de prueba, a la par que en gestión auxiliadora para el juez.

▬ Esa función implica que de algún modo el perito observa, aprecia y dictamina los hechos de tipo técnico objeto de la prueba. Su dictamen, por deducción o inducción, conllevará valorar y decantar los hechos percibidos empleando sus conocimientos especializados con el fin de lograr determinado convencimiento judicial. Según la

Regla 56 de Evidencia, los hechos o datos en los cuales un perito puede apoyar una opinión o inferencia pericial son sus observaciones directas o la información obtenida antes o durante el juicio.

Esa fuente de información para un testimonio pericial —y la amplia libertad de opinar— es uno de los atributos que lo diferencian de un testigo ordinario. Sin embargo, en estricta teoría científica, en el orden psíquico o metafísico, sería un error considerar que únicamente el perito enjuicia, discurre u opina. "[T]ambién el testigo formula juicio, en cuanto define, sustituyendo la mera descripción. Los juicios del testigo se fundamentan en máximas de experiencia comunes. . . . Las narraciones del testigo serán, en definitiva, un juicio —al menos en el sentido lógico del concepto juicio— más o menos simple o complejo; y es que, narrando, a la fuerza deben emitirse juicios, *pues la narración implica el razonamiento y el juicio. Es más, el testigo sería inhábil, si no poseyera capacidad de razonar. . . .* Lo que no podemos admitir es que la diferencia esencial entre el perito y el testigo esté en la formulación intelectual de sus declaraciones." (Énfasis suplido.) Font Serra, *op. cit.*, págs. 109–110. Esa realidad unida a la multiplicidad de variantes impide con rigor matemático establecer a priori, contrastes absolutos y tajantes entre un hecho y una opinión. 7 *Wigmore, Evidence* Sec. 1919 (Chadbourn rev. 1978), págs. 14–17.

Aun así, se señala la existencia de notables distinciones. A modo de reseña la doctrina atiende las siguientes:

1. El testigo generalmente es casual. Viene en contacto con un hecho o suceso en virtud de una relación *extrajudicial* de modo accidental, a veces fortuita. Por el contrario, el perito regularmente es seleccionado por una parte o el tribunal. Desconoce los hechos con anterioridad y formula una apreciación con posterioridad al proceso.

2. Los testigos sólo declaran lo percibido por sus sentidos y relatan hechos. El perito intencionalmente los exa-

mina y evalúa. Al testigo "se le pide noticias sobre los hechos, al perito se le pide un criterio, una apreciación: del primero se invoca la memoria; del segundo, la ciencia, que es el recuerdo de los conocimientos, o la memoria sistemática". C. Lessona, *Teoría general de la prueba en derecho civil*, Madrid, Inst. Ed. Reus, 1942, T. 4, pág. 547. La declaración de un testigo versa sobre "hechos acaecidos o históricos, la del perito [sobre] acaecimientos actuales, e incluso puede aventurar los futuros en base a sus deducciones técnicas. El testigo declara sobre lo que fue objeto de su conocimiento sensorial; el perito dictamina después de haber realizado, con ocasión de ser llamado al proceso, una actividad intelectual perceptiva y deductiva". Font Serra, *op. cit.*, págs. 110-111.

3. Como regla general, el testimonio de un perito es reemplazable. El de un testigo presencial de hechos no.

La dicotomía no es absoluta. No encaja siempre en moldes rigurosos. Cabe la posibilidad de que una persona acumule las cualidades de testigo y perito. Tal condición se configura cuando concurren las circunstancias fortuitas de un perito que presencia o participa en un hecho que subsiguientemente es total o parcialmente objeto de una contienda judicial. Nos "hallamos [ante] una doble actividad probatoria de una misma persona: actividad testifical y actividad pericial. Una misma persona actúa como testigo y perito, a través del procedimiento de la prueba de testigos". Font Serra, *op. cit.*, pág. 116. Véanse: Cabanellas, *op. cit.*, pág. 213; E. Pallares, *Diccionario de Derecho Procesal Civil*, 14ta ed., Méjico, Ed. Porrúa, 1981, pág. 598; Sáez Jiménez y López, *op. cit*, págs. 945-946; E. Gómez Orbaneja, *Derecho Procesal Civil*, 7ma ed., Madrid, Artes Gráficas y Editoriales, 1975, Vol. I, pág. 344. Un autor norteamericano acuña el término "testigos de ocurrencia" (*ocurrence witnesses*) para describir peritos que presenciaron los hechos que motivaron el litigio. M. Graham, *Discovery of Experts under Rule 26(b)(4) of the Federal Rules of Civil Procedure:*

*Part One, an Analytical Study,* 1976 U. Ill. L.F. 895, 941. L. Prieto-Castro expone la cuestión así:

El testigo, aunque no actúe dando una reproducción exacta del hecho, como la placa fotográfica, pues en él las imágenes experimentan una refracción y se recrean por el juicio propio, en esencia da noticia de percepciones concretas de conocimiento, es decir, subjetivas, y aunque tales percepciones hayan sido posibles únicamente en virtud de la posesión de una ciencia, un arte o una práctica, sigue siendo testigo (si bien perito) y sometido a las reglas de esta prueba (es el testigo perito conocido en el derecho alemán, Código procesal, 414), o sea, principalmente, no puede negarse a declarar (según art. 643); el perito, en cambio, aporta nociones o reglas y síntesis generales de ciencia, que por esto son llevadas por el juez, no a la premisa de hechos (menor) del silogismo judicial, sino a la mayor o jurídica; *pero es posible la figura de la doble cualidad, como cuando no sólo se declara sobre hechos percibidos, sino al mismo tiempo se extraen consecuencias o deducciones de ellos; en tal caso se estaría ante un testigo y perito, y le serían aplicables las reglas de una y otra prueba.* (Énfasis suplido.) *Manual de Derecho Procesal Civil,* Zaragoza, Ed. Librería General, 1959, T. I, págs. 326–327.

El binomio de testigo-perito ha sido objeto de varios enfoques. No existe consenso en cuanto al tratamiento judicial a brindarse. La decisión requiere evaluar los intereses en conflicto atribuyéndole a éstos el peso correcto a base de los valores judiciales subyacentes. Analicémoslos.

■ En primer lugar, como máxima y principio derivado de la vida comunitaria y social, se reconoce el deber de todo ciudadano de cooperar en la buena administración de la justicia y comparecer a testificar. *Durán* v. *Sucn. Durán,* 55 D.P.R. 633, 636 (1939). "No es, en verdad, difícil justificar semejante obligación: basta considerar que sin ella no es posible administrar justicia." Lessona, *op. cit.,* págs. 188–189. "En efecto, el testigo no tiene, por lo menos oficialmente, interés directo o indirecto en el proceso, cuyo perjuicio le pueda estimular a intervenir. Pero como la finalidad pública que el proceso persigue no quedaría actuada si se

abandonara a la libre voluntad del testigo la prestación o no de su función de tal, es preciso solucionar el problema a base de la imposición al testigo de una auténtica obligación. Ello quiere decir que existe, en términos generales y sin perjuicio de las correspondientes excepciones, un deber general de testimoniar; una imposición de una conducta, jurídicamente exigible, incluso de modo coactivo, en el grado en que esto resulte posible, por la que se debe rigurosamente la prestación del testimonio." J. Guasp, *Derecho Procesal Civil*, 2da ed., Madrid, Inst. de Estudios Políticos, 1961, pág. 378. "El deber de los testigos de declarar es un sacrificio de todo miembro de una comunidad." Comment, *Compelling Experts to Testify: A Proposal*, 44 U. Chi. L. Rev. 851, 852 (1977).

■ Segundo. El Estado no puede absorber todos los costos que genera el sistema judicial y, por ende, compensar en su verdadera extensión y valor pecuniario la comparecencia de todo testigo, sea de carácter ordinario o un perito. Para los primeros fija unos aranceles módicos. Para los segundos, en el ámbito de la práctica forense civil, los deja a la libre contratación de las partes o a la razonable estimación judicial por vía de costas o mandato directo. En cuanto a testigos regulares, los estipendios reglados no pretenden reembolsar efectivamente la inversión de tiempo y el talento desplegado. Por imperativo circunstancial la carga se disemina entre todos los sectores y litigantes. Así, tanto para el obrero como el profesional mejor remunerado, el comparecer a una deposición o asistir a un tribunal como testigo regular conllevará un sacrificio económico e impacto negativo sobre el jornal diario u honorarios, respectivamente. Sus efectos perjudiciales, aunque cuantitativamente diferentes y relativos, son reales y compartidos por ambos. En consecuencia, deben ser absorbidos por todos sin que sea dable establecer distinciones, cuando en el fondo la calidad de la comparecencia es esencialmente una misma e igual: testigos de hechos.

■ Tercero. Esa obligación, inherente a la condición de que toda persona es miembro de una sociedad, sumada a la inhabilidad del Estado para sufragar completamente los gastos reales que genera la comparecencia de testigos, y la necesidad de que sus efectos sean distribuidos entre todos, impone como resultado rechazar la noción de que el simple hecho de que una persona posea conocimiento especializado y a su vez sea testigo automáticamente le hace acreedor a una remuneración mayor que la dispuesta para todos. Aunque ciertamente el testimonio de tales personas implica la utilización de los recursos y las destrezas particulares adquiridas mediante una preparación formal —atributos propietarios representativos de una inversión de tiempo y valor— si es un testigo de hechos, ello no desnaturaliza la obligación básica ciudadana de compartir el costo de administrar la justicia.

Estas consideraciones están condensadas del siguiente modo:

El concepto de derecho de propiedad ha sido extensamente explorado en un sinnúmero de casos en que un litigante ha pretendido utilizar un perito citándolo como testigo ordinario. La casuística está fuertemente dividida. Con referencia a conocimientos ya adquiridos, sea por observación o mediante conclusión pericial, la mayoría de los tribunales sostienen que el experto debe ser tratado como cualquier otra persona que posee conocimiento vital pertinente a la controversia. Esto es, el experto, por tal condición, no puede negarse a testificar como tampoco reclamar unos honorarios en exceso de los que corresponden a un testigo ordinario. La razón para esta postura estriba en que al ciudadano llamado a testificar se le requiere un enorme sacrificio de su salario o ganancia, y parecería necesario que se compensara a cada individuo según su pérdida particular, si no se reconociese que cada ciudadano está en el deber de testificar. (Traducción nuestra.) J. Friedenthal, *Discovery and Use of an Adverse Party's Expert Information*, 14 Stan. L. Rev. 455, 479-480 (1962). Véase: Note, *The Contingent Compensation of Expert Witnesses in Civil Litigation*, 52 Ind. L.J. 671 (1977).

Establecidos los principios que rigen la materia, concentrémonos en su metodología. Con el propósito de lograr una adecuada clasificación que permita a los tribunales dilucidar cuándo se puede exigir a un perito declarar, bajo qué circunstancias y qué derechos tiene, se han elaborado varios enfoques. (³) La posición mayoritaria sostiene que un perito puede ser obligado a declarar —sin derecho a honorarios adicionales— sobre opiniones formadas previamente (*already-formed*), si no se requieren estudios posteriores. (⁴) Bajo este criterio no se le puede compeler a realizar tareas, estudios o experimentos adicionales (*out-of-court work*). Comment, *supra*, págs. 854–855. Otras jurisdicciones han adoptado la norma sobreprotectora de impedir que el perito pueda ser obligado. Comment, *supra*, págs. 855–856. Ambas orientaciones son objeto de críticas. De no establecerse reglas claras, las determinaciones de qué constituye "opinión formada previamente" o cuáles son "hechos" —en contraste con "opiniones"— imponen a los tribunales una pesada carga de resolver caso por caso. Finalmente, otras jurisdicciones admiten la compulsoriedad a cambio de que se provea al perito una compensación en exceso del arancel correspondiente a un testigo ordinario. Comment, *supra*, págs. 856–857.

Para equilibrar la situación, tomando como criterio la fuente del conocimiento de perito, se han articulado tres categorías.

---

(³) Estos enfoques responden propiamente a análisis bajo la Regla 26(b)(4) de Procedimiento Civil federal, concordante con la Regla 23.1(c) nuestra. Por su íntima relación, los mismos son susceptibles de aplicarse a situaciones como la que nos ocupa.

(⁴) Existe la práctica de algunos peritos de siempre repasar y prepararse para profesionalmente desempeñarse y demostrar la calidad de sus dictámenes. Se aduce que ello les toma tiempo adicional y amerita la concesión de honorarios adicionales. Algunos tribunales y comentaristas se refieren al fenómeno como *"vanity problem"*. Comment, *Compelling Experts to Testify: A Proposal*, 44 U. Chi. L. Rev. 851, 866, esc. 60 (1977). Descartan que tal preparación, de tipo rutinario, justifique una remuneración mayor.

■ *Peritos de ocurrencia (occurrence experts)*. Agrupa a aquellos que de antemano han obtenido conocimiento extrajudicial de los hechos a través de observaciones directas o por participación en eventos subsiguientemente pertinentes a la litigación. Pueden haber sido remunerados o no en aquel momento. Son personas que han tenido percepción inmediata de los hechos y, como tales, poseen información irreemplazable. Se distingue del testigo ordinario en que utiliza su entrenamiento especial al percibir los sucesos. En nuestra jurisdicción, ilustrativos son los casos de *Rivera Sierra* v. *Tribunal Superior,* 97 D.P.R. 417, 429 (1969) —patólogo al servicio del Estado, quien por razón de su cargo entró "en el curso de la cadena de hechos relacionados con la cuestión litigiosa, y que a través de sus sentidos conoció y percibió parte de ellos"; y *Sucn. Mangual* v. *Hastings,* 56 D.P.R. 21, 26 (1940) —médico de un hospital municipal que brindó tratamiento a una víctima de un accidente automovilístico y prestó testimonio al efecto sin que ello requiriera "una preparación especial previa". Como regla general, éstos se consideran testigos ordinarios a todos los efectos y no tienen derecho a ninguna remuneración especial.

■ *Peritos en general (general experts)*. Corresponde a los que no están relacionados con los hechos singulares en controversia. Como tales, no han presenciado los acontecimientos ni han hecho "estudios especiales de los hechos particulares del caso".

■ *Peritos intermedios (intermediate experts)*. Comprende a quienes, debido a los estudios específicos que han efectuado en previsión del futuro o durante el proceso, están familiarizados con los hechos particulares del caso. Comment, *supra,* págs. 860–866. De ordinario, tanto el perito general como el intermedio son acreedores al pago de honorarios adicionales.

En ausencia de legislación expresa que reglamente de manera integral la materia,(5) las categorías enunciadas

---

(5) La Ley Núm. 109 de 5 de julio de 1974 (3 L.P.R.A. sec. 551) guarda íntima

pueden servir adecuadamente en nuestra jurisdicción como punto de partida para que el poder judicial identifique y compense a personas llamadas a participar en el proceso que reúnen las características que definen al testigo perito. Apliquémoslas al caso de autos.

## III

La observancia recta de los principios conceptuales, jurídicos y procesales expuestos nos mueve a concluir que el ingeniero Merly Pérez no tiene razón en sujetar su comparecencia y deposición al pago de honorarios en exceso de los dispuestos en la reglamentación vigente para un testigo regular.

El substrato de su contención es su condición de profesional. Ese solo fundamento no es suficiente para reclamar una compensación superior. Simplemente es un testigo de hechos que cae en la categoría de "perito de ocurrencia". Al realizar la tasación para San Lorenzo Trading, Inc. percibió y advino, *previamente* en conocimiento extrajudicial de una situación fáctica que resultó ser luego pertinente al litigio. A la sazón le fueron satisfechos sus honorarios. Al presente, repetimos, para fines de la deposición *es un testigo de hechos*, aunque de innegables credenciales por su capacitación. Como tal viene obligado a deponer sobre sus vivencias en ocasión de haber confeccionado su informe, las cuales naturalmente recogen sus impresiones empíricas e incluyen sus apreciaciones subjetivas de índole técnica y valorativa. Concebible y presuntivamente, salvo una preparación rutinaria para refrescar la memoria, su comparecencia no conllevará ulteriores estudios o tasaciones adicionales. Su testimonio estará limitado al ámbito del informe y opinión formada (*already-formed opinion*).

---

relación con la materia. Está inspirada en la doctrina expuesta en *Rivera Sierra* v. *Tribunal Superior*, 97 D.P.R. 417 (1929); y *Sucn. Mangual* v. *Hastings*, 56 D.P.R. 21 (1940). Como única expresión legislativa vigente, la misma es totalmente compatible con los pronunciamientos de hoy y se complementa con los mismos.

■ En conclusión, ante los tribunales el peticionario ingeniero Merly Pérez está en igual posición que el obrero, diestro o semidiestro, que realiza unas tareas en el curso ordinario de su oficio con anterioridad a surgir una controversia judicial, y luego es citado para una deposición o es llamado a atestar sobre la manera en que llevó a cabo su labor. Indudablemente que, aparte del producto final, la única diferencia válida entre ambos radica en la educación académica y, como corolario, en una mejor remuneración específica. En esas circunstancias el poder judicial no puede suscribir su tesis de privilegio individual, como profesional, cuyo factor dominante es el económico. La supremacía de un régimen constitucional de justicia que proclama la esencial igualdad de todos ante la ley rechaza ese enfoque. Véase, *Molina* v. *C.R.U.V.*, 114 D.P.R. 295 (1983). El principio rector predominante reclama de los miembros de la sociedad el deber ineludible de comparecer y declarar, aunque su aplicación, para algunos, pueda representar sacrificios económicos mayores.

■ Finalmente, resta aclarar el horizonte de nuestra decisión. No es ilimitado. Para atemperar el rigor de toda citación de este género, los interesados deben coordinar, o en su defecto el tribunal debe dictar, la fecha, hora, sitio y demás condiciones que propendan a garantizar el menor de los perjuicios al deponente. Véase la Regla 23.2 de las de Procedimiento Civil de 1979. Además, en casos apropiados, cuando en el transcurso de una deposición la naturaleza del interrogatorio coloque el testimonio en cualesquiera de las otras categorías, queda también a salvo la facultad protectora de los tribunales de instancia para decretar posteriormente la compensación adicional que razonablemente ello amerite.

*Se confirma la resolución recurrida.*

El Juez Asociado Señor Rebollo López emitió opinión disidente. El Juez Asociado Señor Díaz Cruz no intervino.

—O—

Voto disidente emitido por el Juez Asociado Señor Rebollo López.

En la opinión concurrente de fecha 28 de marzo de 1983 que emitimos en el caso de *Escobar Galarza* v. *Banuchi Pons*, 114 D.P.R. 138 (1983), expresamos que somos del criterio que una de las labores principales —si no la principal— de este Tribunal es la de implantar normas o guías que ayuden a los miembros de la profesión legal en general en la difícil labor que día a día tienen que desempeñar, en específico en relación con aquellas áreas de Derecho en que, a pesar del esfuerzo realizado en el pasado, todavía existen "lagunas".

En el día de hoy añadimos que tenemos el deber y la obligación, hasta donde ello sea posible, de implantar aquellas normas o guías que no sólo sean justas con todas las partes y personas envueltas en un litigio, sino que sean sencillas, claras y de fácil implementación. Lo complicado y elaborado no necesariamente es lo jurídicamente correcto.

Entendemos que la opinión de la mayoría de este Tribunal en el presente caso desatará una serie de controversias a nivel de instancia, que puede llevar a un caos en la administración de la justicia. El interrogatorio de "peritos" —en especial a nivel de la etapa de descubrimiento de prueba e inclusive, por cuanto no se limita la norma implantada, en la vista en su fondo de los casos— se verá plagado de "dimes y diretes" cuando las partes se enfrasquen en discusiones estériles sobre si las preguntas que se  formulan al perito caen bajo la categoría de preguntas a "peritos de ocurrencia, peritos en general o peritos intermedios".

En adición a lo anteriormente expresado, auguramos que si difícil es hoy en día para una parte o su abogado el conseguir a un profesional competente, no importa lo que se ofrezca pagarle, que consienta —en previsión de un litigio— a prestar sus servicios en calidad de perito, la situación se

volverá intolerable e imposible una vez se conozca por las clases profesionales la decisión que hoy emite el Tribunal en el presente caso.

Todos los abogados en Puerto Rico que han practicado activamente la profesión en la fase de litigación han sido, en una que otra ocasión, "víctimas" de *algunos* testigos peritos que en una forma insensible y mercenaria exigen el pago de honorarios exorbitantes como condición previa a prestarse a servir como testigos en corte. Dicha práctica, cada vez más frecuente, es altamente indeseable y merece el más completo y total repudio de los tribunales de justicia de nuestro país.

Esa conducta de *algunos* profesionales de intentar lucrarse y aprovecharse de la necesidad que de sus servicios como perito tienen sus conciudadanos cuando se ven envueltos en un litigio no puede llevar a este Tribunal a ser, a su vez, insensible con *todos* los miembros de las distintas clases profesionales en Puerto Rico. No se corrige un mal creando uno nuevo y distinto.

No podemos olvidarnos del hecho de que el conocimiento y la experiencia que tiene un profesional en un momento dado de su vida —de tal grado que lo califica para servir como perito en un tribunal— ha sido el producto del sacrificio, trabajo, esfuerzo y tesón de éste. Entendemos que ese profesional tiene derecho a cobrarle a aquel que quiera obtener el beneficio de su conocimiento y de su experiencia. Parafraseando al extinto Presidente de Estados Unidos Abraham Lincoln, los únicos recursos con que cuenta un profesional para ganarse el sustento de él y de su familia son su tiempo y su consejo. En otras palabras, el profesional vive de lo que cobra por los servicios que presta, por los consejos y recomendaciones que ofrece a los que solicitan su ayuda, y por el tiempo que invierte en ello.

No hay duda de que un profesional, en determinado momento, puede verse envuelto en una situación de hechos en relación con la cual pueda ser citado como un *mero tes-*

*tigo* de los mismos. Si dicho profesional es citado a declarar, no tendría derecho a honorarios como perito, por cuanto se trataría de un testigo más que circunstancias fortuitas han colocado en el curso de una cadena de hechos relacionados con la cuestión litigiosa. Ese sería, a manera de ejemplo, el caso de un médico que observa la ocurrencia de un accidente y es llevado a declarar sobre el momento preciso en que, en su opinión, el accidentado expiró; inclusive sería el caso del médico cirujano que participa en una intervención quirúrgica y es llamado a declarar sobre hechos ocurridos en el quirófano durante la operación que se llevó a cabo.

Completamente distinta es la situación, a nuestra manera de ver las cosas, cuando un profesional es requerido para que, previo el examen o análisis de una determinada situación, emita su opinión y rinda un informe al respecto. Desde el hecho más simple que pueda aparecer en dicho informe hasta el más técnico y complicado, *todos los hechos que surgen del informe rendido por el perito son el producto y la consecuencia de su condición como tal y están permeados por ella.* Si alguna parte interesa saber y perpetuar el porqué de lo expuesto en su informe mediante la toma de una deposición, debe venir obligada a compensarle razonablemente por el tiempo que ello tome al perito. La alternativa que dicha parte tiene es conformarse con lo que surge del informe.

En el presente caso los demandantes y los demandados otorgaron un contrato de compraventa mediante el cual los primeros le compraron a los segundos las acciones de una corporación conocida como San Lorenzo Trading, Inc. El "activo" principal de la referida corporación —el cual fue la base para calcular el precio de las acciones— lo fueron dos propiedades localizadas en el Barrio Hato de San Lorenzo, Puerto Rico. Después de otorgado el contrato de compraventa surge una controversia *sobre la cabida* de las referidas propiedades y, por ende, sobre el valor de las acciones, controversia que desembocó en la demanda que se presenta

en el tribunal de instancia. El aquí peticionario, en su calidad de ingeniero tasador, había sido contratado tres años antes de la venta de las acciones por uno de los demandados para que tasara dichas propiedades y rindiera un informe de tasación (*appraisal report*) sobre el valor de las mismas. Hay que destacar que el peticionario no es empleado de ninguna de las partes, no recibe un sueldo como tal y no se trata de un testigo que las circunstancias pusieron en el curso de la cadena de hechos relacionados con la cuestión litigiosa, sino que, por el contrario, fue contratado para que realizara un acto específico de tasación en su calidad de perito en la materia y todo lo que aparece en el reporte de tasación rendido es el resultado o consecuencia de su condición de profesional que tiene conocimiento especializado y experiencia en la materia sobre la cual versa dicho informe.

Entendemos que el peticionario tiene derecho a cobrar honorarios razonables como testigo perito en relación con su comparecencia a la toma de la deposición; honorarios que, en caso de diferencias de criterio respecto a la razonabilidad de los mismos, deben ser fijados por el tribunal de instancia.

Por los fundamentos antes expuestos revocaría la orden recurrida.