TEXTO COMPLETO DE LA SENTENCIA
Los demandantes-apelantes solicitan la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Arecibo (Hon. Manuel Orriola Pérez, Juez), el 15 de diciembre de 1999. Mediante dicha sentencia se desestimó la demanda de daños y peijuicios presentada contra Doctor Susoni Community Health Services; Hospital Doctor Susoni, Inc. y el Estado Libre Asociado de Puerto Rico. Con el beneficio de la comparecencia de todas las partes y por los fundamentos que habremos de exponer, confirmamos la sentencia apelada.
I
El 5 de septiembre de 1995, la Sra. Monserrate Marengo Lugo murió en el Hospital Regional de Arecibo, después de haber sido trasladada allí por padecer un fuerte dolor estomacal. Luego de su muerte, su cuerpo fue trasladado hasta la morgue del hospital. Al momento de fallecer la Sra. Marengo, la Isla se encontraba en alerta ante el posible paso del Huracán Luis entre los días 6 y 7 de septiembre de 1995. De acuerdo al codemandante-apelante, José Guillermo Ríos, compañero de la occisa, el hospital indicó que no entregaría el cuerpo de la Sra. Marengo hasta pasada la emergencia del huracán. El 7 de septiembre de 1995, el codemandante-apelante, Sr. Ríos, recibió el visto bueno del hospital para proceder con el traslado del cuerpo hacia una funeraria.
Al momento de entrar a la morgue del hospital para recoger y trasladar el cuerpo de su compañera, Ríos notó que el mismo estaba fuera de la nevera de la morgue y colocado en una camilla. Expresó que del cuerpo surgía mal olor, que estaba tieso e inflado; y que al trasladarlo a otra camilla con la ayuda de otras personas se manchó su ropa con un líquido, el cual alegó era sangre que provenía del cuerpo de la occisa.
Luego de recogido el cadáver y trasladado a la Funeraria Irizarry de Utuado, el embalsamador William Medina Tores examinó el mismo y determinó que debido a su avanzado estado de descomposición, no sería posible llevar a cabo un embalsamamiento tradicional. Al no poderse restaurar la fisonomía del cadáver, no procedía su exposición, sino mantenerlo en un ataúd cerrado.
De acuerdo a las alegaciones de la parte demandante-apelante, el entierro de la Sra. Marengo se llevó a cabo el 8 de septiembre de 2000, un día antes de lo señalado, debido al avanzado estado de descomposición en que se *854 encontraba el cadáver. Ante dicha situación, la codemandante-apelante, Abigail Narváez Marengo, alegó que viajó desde el estado de New York y que llegó en horas de la noche del mismo día 8, por lo que no pudo cumplir su deseo de ver el cuerpo de su madre por última vez.
Ante este cuadro de hechos, el señor Ríos y la señora Narváez radicaron, el 23 de agosto de 1996, una demanda sobre daños y perjuicios contra Doctor Susoni Community Health Service Corp. (en adelante, DSCHS); Hospital Doctor Susoni Inc. y el Estado Libre Asociado de Puerto Rico. Alegaron en síntesis que sufrieron grandes angustias mentales causadas por todos aquéllos que incurrieron en negligencia en el manejo de los restos de la señora Marengo. Adujeron que tales angustias se debieron a la falta de respeto y consideración a sus sentimientos y a la memoria de la señora Marengo; a que por la condición del cadáver, el señor Ríos no pudo llevar a cabo un servicio fúnebre en el que pudiera exponer el cadáver tal y como era su deseo; y a que la señora Narváez no pudo ver por última vez el cuerpo de su madre debido a la forma irresponsable en que éste fue tratado. Alegaron los demandantes-apelantes que los daños sufridos por ellos surgieron como resultado de la negligencia de los demandados-apelados y sus respectivos empleados, funcionarios o agentes, en el desempeño de sus obligaciones a la hora de manejar el cadáver de la señora Marengo.
Las demandadas-apeladas, DSCHS y Hospital Doctor Susoni Inc., contestaron por separado la demanda, negaron las alegaciones, y como defensas afirmativas, negaron la existencia de negligencia. En la alternativa, alegaron que si hubo negligencia, ésta se debió a terceras personas ajenas a sus respectivas instituciones. Señalaron, además, que el caso se trataba de un acto fortuito y de una emergencia súbita, que la condición por la cual murió la paciente era una que aceleraba la descomposición del cadáver y que al momento de los hechos ninguno de ellos realizaba función alguna de administración en el hospital. El Estado, por su parte, contestó la demanda y negó, por diversas razones, los hechos alegados en la misma. Como defensas afirmativas señaló, éntre otras, que los daños, si alguno, ocurrieron por la culpa o negligencia de un tercero por el cual el Estado no responde, y que no existe relación causal entre los actos alegadamente realizados por el Estado y los daños alegadamente ocasionados a la parte demandante-apelante.
El 14 de diciembre de 1999, se llevó a cabo la vista de negligencia. En ella, la parte demandante-apelante presentó como testigos al señor José Guillermo Ríos (co-demandante), señor William Medina (embalsamador del cuerpo de la señora Marengo) y el señor Edwin Batista (técnico de histopatología que labora en el hospital donde falleció la señora Marengo). Con esa prueba, la parte demandante-apelante dio por sometido su caso en la vista de negligencia, tras lo cual, los demandados solicitaron la desestimación del caso, toda vez que los elementos de negligencia no se probaron y no se presentó nexo causal.
El Tribunal de Primera Instancia dictó sentencia, el 15 de diciembre de 1999, desestimando la demanda. Determinó el tribunal que con la prueba presentada no se podía establecer que el estado de putrefacción en que se encontraba el cadáver se podía imputar a los demandados-apelados. Específicamente, concluyó que durante la vista no se presentó evidencia que diera base para establecer nexo causal entre la descomposición del cadáver y actuaciones negligentes de los demandados-apelados que hubiesen agravado o acelerado la descomposición. Para llegar a esa conclusión, el tribunal señaló que ninguno de los testigos indicó mal manejo del cadáver y que la única declaración en contra del hospital fue que el cadáver se encontraba en una camilla fuera de la nevera a la hora de recogerlo. Señaló, también, el tribunal que existen diversas razones por las cuales un cadáver puede descomponerse y que lo ocurrido en este caso pudo agravarse con los dos días que el cadáver estuvo en espera de ser recogido, luego del aviso de huracán.
Los demandantes apelan de ese dictamen. Plantean que erró el tribunal al no permitir que el perito de la parte demandante testificara sobre la causa próxima de la rápida descomposición del cuerpo; al permitir que un testigo lego testificara sobre asuntos de carácter pericial; al aquilatar el testimonio del señor Edwin Batista y al aplicar la Regla 39.2(c) de las de Procedimiento Civil.
*855 Ante este Tribunal se realizó un extenso trámite, mayormente relacionado con la preparación y aprobación de la exposición narrativa de la prueba. Finalmente, y con la anuencia de las partes, los demandantes-apelantes presentaron una transcripción de la vista en su fondo, que aceptamos junto a la estipulación del testimonio del señor Edwin Batista, como exposición narrativa estipulada.
Sometidos, oportunamente, los alegatos suplementarios de las partes, estamos en posición de resolver. Al evaluar los planteamientos de la parte demandante-apelante, a la luz de la prueba presentada en primera instancia, resolvemos confirmar el dictamen objeto de este recurso.
II
En el primer señalamiento de error, la parte demandante-apelante expresa que fue incorrecta la decisión del Tribunal de Primera Instancia al no permitir que el perito traído por esa parte testificara sobre la causa próxima de la rápida descomposición del cuerpo de la señora Monserrate Marengo. El testigo William Medina es embalsamador licenciado y fue cualificado como perito para que testificara sobre su área de peritaje; a saber, el proceso de embalsamamiento. En la segunda conferencia entre abogados se señaló que la parte demandante-apelante presentaría al señor Medina para que éste testificara sobre la condición del cadáver al momento en que llegó a sus manos en la funeraria y las razones por las que no pudo embalsamarlo.
La Regla 52 de Evidencia, 32 L.P.R.A. Ap. IV, regula el alcance del testimonio pericial. Nos dice:
“Cuando conocimiento científico, técnico o especializado, sea de ayuda para el juzgador entender la evidencia o determinar un hecho en controversia, un testigo capacitado como perito, en relación con el material sobre el cual va a declarar, podrá testificar en forma de opiniones o de otra manera. ” [Enfasis suplido].
El adjetivo perito proviene del latín peritas a um, y describe a la persona conocedora y versada. En su acepción clásica, la definición reconocida y universal -a distinción de la connotación jurídica, procesal y evidenciaría-, corresponde al inteligente, experimentado, práctico en una ciencia, arte o cualquiera otra materia. La nota característica que aflora de estas definiciones proyecta la visión de aquellas personas con conocimiento especializado en materias que, de ordinario, no son conocidas con precisión por el gmeso de la población. "Perito es, por tanto, la persona entendida, el individuo competente, idóneo por tener unas determinadas actitudes y conocimientos, por poseer una adecuada capacidad. Como sinónimos del vocablo perito, se utilizan en el lenguaje común, los términos experto, especialista, técnico, etc." San Lorenzo Trading Inc. v. Hernández, 114 D.P.R. 704, 709 (1983). Nuestro ordenamiento jurídico se hace eco de tales expresiones al decimos que perito es aquella persona que posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente. Regla 53 de Evidencia, supra.
De acuerdo con la Sec. 11 de la Ley Número 6 de 9 de marzo de 1967, 20 L.P.R.A. sec. 1011, que creó la Junta Examinadora de Embalsamadores, el término "embalsamamiento" significa la conservación de cadáveres mediante la inyección en las arterias y en las cavidades de los cadáveres de soluciones antisépticas que retardan la descomposición natural y mediante el taponamiento de orificios, de acuerdo con procedimientos que la Junta de Embalsamadores prescriba o autorice por reglamento adoptado al efecto.
De la transcripción de la vista de negligencia, surge que el abogado de la demandante-apelante, al referirse al avanzado estado de descomposición del cadáver, le hizo la siguiente pregunta al señor Medina:
“¿Ya qué usted cree que se debe esa composición [sic] acelerada?” (E.N.P, página 34, líneas 1 y 2)
Inmediatamente, tanto la Leda. Soto, abogada del E.L.A. y el Ledo. Sánchez, abogado del Hospital Dr. Susoni, levantaron objeciones a la pregunta. El Ledo. Sánchez levantó la objeción bajo el fundamentó de que esa no era materia sobre la cual el embalsamador podía declarar. Luego de la objeción, las partes discutieron las *856 razones por las cuales debía o no permitirse la pregunta.
El tribunal concluyó que no iba a permitir preguntas al embalsamador relacionadas con las razones para la descomposición acelerada del cadáver. Ante esa negativa, el abogado de la parte demandante-apelante hizo un ofrecimiento de prueba señalando para el registro que el testigo va a testificar que el cuerpo fue entregado en avanzado estado de descomposición y que, en su opinión, el proceso de conservación del cuerpo fue negligente, ya que al momento en que la persona muere no se le dio la refrigeración adecuada, y por eso es que le llega a él en estado de descomposición. [E.N.P. pág. 40, líneas 9-18].
A preguntas del Juez sobre qué conocimientos había "establecido" el embalsamador en cuanto al mantenimiento de cadáveres en el hospital, éste declaró:

“Sr. Medina: Bueno, este, si porque nosotros, este, cuando nos dan los seminarios.

Y cuando estudiamos, vamos a decir, yo como embalsamador tuve que observar 40 autopsias en el Instituto de Ciencias Forenses.

Juez Orriola: Pero habla del procedimiento del cadáver en el momento que la persona fallece ¿cuál es el procedimiento, qué tipo de curso tiene usted en cuanto a eso? (No se entiende) a lo que usted ha estudiado en (no se entiende).

Sr. Medina: no he tenido cuenta de eso.

Juez Orriola: No ha tenido cuenta de eso en cuanto a procedimientos en hospital que él haya estudiado. ” [E.N.P. pág. 41].
En el contra interrogatorio, el abogado del hospital le formuló la siguiente pregunta al embalsamador:

Ledo. Sanchez. Testigo, la causa medica de esa descomposición usted la desconoce de ese cadáver, ¿eso es así verdad?

Sr. Medina: La desconozco o mejor dicho no la recuerdo porque se supone que yo las lea en el desto [sicj, no las recuerdo, pero yo no puedo ser.

Ledo. Sánchez: Pero porque [sicj, pero si se descompuso aceleradamente usted no lo sabe porqué fue.

Sr. Medina: Mjú [sic], ” [E.N.P. pág. 461.]
Del testimonio de este testigo podemos concluir dos cosas: primero que su área de conocimiento se circunscribió a retardar la descomposición natural de los cadáveres mediante la inyección de soluciones antisépticas y tapar orificios. Su conocimiento no se extiende a las causas de la descomposición de un cadáver. En segundo lugar, el embalsamador testificó no tener estudios sobre el manejo de cadáveres en los hospitales y que su conocimiento al respecto se limitaba a unas autopsias que había observado mientras estudiaba. En otras *857 palabras, el embalsamador es un experto en arreglar y restaurar cadáveres, pero no lo es en cuanto a las razones biológicas por las cuales un cuerpo inerte se descompone. Como el testigo no estaba capacitado como perito en relación con la materia sobre la cual se pretendía que opinara (que al cuerpo no se le dio refrigeración adecuada en el hospital y que por tal razón el cadáver llegó en estado de descomposición). Por lo tanto, no erró el Tribunal de Primera Instancia al no permitir la pregunta objetada. El embalsamador fue anunciado para testificar sobre la condición del cadáver al momento en que llegó a sus manos y las razones por las cuales no pudo ser embalsamado. No podía pretender la parte demandante-apelante traer a opinar al embalsamador sobre un asunto para el cual no fue previamente anunciado y sobre el cual no tenía el peritaje necesario.
III
En segundo lugar, alega la parte demandante-apelante que erró el tribunal al permitir que un testigo lego (el señor Edwin Batista) testificara sobre asuntos de carácter evidentemente pericial y al aquilatar el testimonio de ese testigo. La Regla 38, conjuntamente con la Regla 51 de Evidencia, supra, establece que todo testigo que declare en un tribunal, podrá hacerlo a base de su conocimiento personal sobre el asunto. En otras palabras, el testigo no puede expresar opiniones. La única excepción a esta norma, surge cuando las opiniones o inferencias que haga el testigo estén racionalmente basadas en la percepción del testigo y que sean de ayuda para el mejor entendimiento de su declaración. Pueblo v. Miranda, 130 D.P.R. 507 (1992).
La parte demandante-apelante señala en su alegato que durante un momento dado del interrogatorio, el señor Batista testificó que "los cadáveres pueden cambiar por razón de la causa de la muerte". Exposición narrativa parcial de la prueba oral, de 26 de mayo de 2000, pág. 4. Sostuvo que es difícil entender que el tribunal pudo a base de esa aseveración, llegar a la conclusión de que en el caso de la señora Monserrate Marengo, éste pudo haber sido el caso. Señala, además, que el error manifiesto del tribunal radica en que al aquilatar esa aseveración, se aceptaron como posibles varios hechos sobre los que no se trajo prueba alguna.
Cabe señalar que la aseveración hecha por el señor Batista no está cobijada por la Regla 51, supra, ya que era un testigo no perito y no podía declarar opiniones o inferencias basadas en asuntos fuera de su percepción. Aún así, tal aseveración no logró en manera alguna relacionar la conducta de los demandados-apelados con los daños. Por consiguiente, la aquilatación de la anterior aseveración hecha por el Tribunal de Primera Instancia, no cambió el resultado final del caso. A tal efecto, la Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV, señala:

“No se dejará sin efecto una determinación de admisión de evidencia, ni se revocará sentencia o decisión alguna, por motivo de admisión errónea de evidencia a menos que:

(a) la evidencia fue erróneamente admitida, a pesar de la oportuna y correcta objeción de la parte perjudicada por la admisión, y

(b) el tribunal que considera el efecto de la admisión errónea, entiende que éste fue error decisivo o sustancial en la sentencia o decisión cuya revocación se solicita. ”

Consideramos que el efecto de la admisión de la aseveración del testigo Batista, no fue un error decisivo o sustancial en la sentencia apelada. Según lo señalado en la sentencia, el tribunal determinó que con la prueba testifical presentada no se pudo establecer que el estado de putrefacción que tenía el cadáver se pudiera imputar a los demandados. Expresó el tribunal en la página 2 de la Sentencia que:

“durante la vista, no se presentó evidencia alguna que nos diera base para establecer nexo causal entre la responsabilidad del hospital en velar por la preservación del cuerpo y el estado en que éste se encontraba. Ninguno de los testigos indicó mal manejo del cadáver. Por parte del hospital, la única alegación fue que cuando van a buscarla, este [sic] se encontraba en una camilla fuera de las neveras para su recogido.

Aunque en la sentencia apelada se expresó que "existen diversas razones por las cuales un cadáver puede *858 descomponerse" (Sentencia, pág. 24), entendemos que dicha manifestación no cambia en forma alguna la disposición final del caso. Por otro lado, la admisión de la evidencia que da paso a tales pronunciamientos no fue un error decisivo o sustancial en la sentencia cuya revocación se solicita. El tribunal desestimó la demanda debido a la ausencia de prueba para establecer el nexo causal entre la descomposición de cadáver de la señora Marengo y el manejo del mismo por parte de los demandados-apelados.
Es norma reiterada que un tribunal revisor puede confirmar el resultado de la sentencia apelada, pero no necesariamente por todos los fundamentos expuestos en la misma. A. esos efectos, el Tribunal Supremo ha señaládo que la revisión se da contra la sentencia y no sus fundamentos. Pueblo v. González Vega, Opinión de 16 de marzo de 1999, 99 J.T.S. 27; Sánchez v. Eastern Air Lines, 114 D.P.R. 691 (1983).
En este caso, aun cuando el tribunal de instancia, erróneamente, le haya dado algún peso a las declaraciones del señor Batista a la hora de desestimar el recurso, resolvemos que la conclusión a la que se llegó en la sentencia apelada se ajusta a derecho. La prueba presentada por la parte demandante-apelante no logró demostrar uno de los elementos esenciales de toda causa de acción de daños y perjuicios: el nexo causal entre la descomposición del cadáver y la negligencia de los demandados-apelados en el manejo del cuerpo. De hecho, no se probó acto negligente alguno. Por ende, la reclamación de daños no procedía como cuestión de derecho.
IV
La demandante-apelante expone como último señalamiento de error, la aplicación por parte del Tribunal de Primera Instancia, de la Regla 39.2(c) de Procedimiento Civil, supra. Esta Regla, en su parte pertinente dispone: ’

“(c) Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de derecho alguno. El Tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. ’’

Al interpretar esta regla, el Tribunal Supremo ha indicado que radicada una moción de desestimación al amparo de la misma, luego de presentada la prueba del demandante, el tribunal está autorizado en esa etapa a aquilatar la prueba presentada y a formular su apreciación de los hechos, según la credibilidad que le haya merecido la evidencia. Pero esa facultad debe ejercitarse después de un escrutinio sereno y cuidadoso de la prueba, y en caso de duda, es preferible requerir al demandado que presente su prueba. Romero Arroyo y otros v. Estado Libre Asociado de Puerto Rico, Opinión de 7 de diciembre de 1995; 95 J.T.S. 158, Rosselló Cruz v García, 116 D.P.R. 511 (1985).
Tomando en consideración lo antes expuesto, procedía que se concediera la desestimación solicitada. Hay que recalcar que los fundamentos para la desestimación se basaron mayormente en que no se encontró nexo causal entre la descomposición del cadáver y las actuaciones de los demandados-apelados.
El Artículo 1802 del Código Civil, 31 L.P.R.A. see. 5141, reza:

El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. ”

La causa de acción por culpa o negligencia que emana del Artículo 1802 del Código Civil, ibid., se compone de tres elementos: (1) el acto u omisión negligente o culposo; (2) el daño, y (3) la relación causal entre el acto u omisión culposa o negligente, y el daño sufrido. La relación causal entre una omisiónnegligente y un daño, existe cuando de haberse realizado el acto omitido se hubiere evitado el daño. Ramírez Salcedo v. Estado *859 Libre Asociado, Opinión de 19 de marzo de 1996; 96 J.T.S. 41; Soc. de Gananciales v. González Padín Co. Inc., 117 D.P.R. 94 (1986). En este caso, la prueba presentada por la parte demandante-apelante no fue suficiente para demostrar uno de los elementos de la causa de acción en daños y peijuicios, a saber, el nexo causal entre la descomposición del cadáver y la negligencia por parte del hospital en el manejo del cuerpo.
A diferencia de los casos penales, en que la culpabilidad del imputado debe probarse más allá de toda duda razonable, en los casos civiles, la decisión del juzgador deberá producirse de acuerdo con la preponderancia de la prueba, a base de los criterios de probabilidad. C.J. Irizarry Yunqué, Responsabilidad Civil Extracontractual, 2da. ed., San Juan, Facultad de Derecho Universidad Interamericana de Puerto Rico, 1986, pág. 173. La Regla 10 de Evidencia, supra, dispone que la obligación de presentar evidencia recae sobre la parte que sostiene la afirmativa en la cuestión en controversia, y que el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna de las partes. Esto significa que el que alega la negligencia, debe probarla. Aún después de establecerse cumplidamente la negligencia del actor, es imprescindible probar los elementos concurrentes de daños y de relación causal para que el demandante pueda prevalecer. H. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, Publicaciones J.T.S., 1986, Vol. I, pág. 394.
En este caso, no hubo prueba de que alguna acción u omisión del hospital tuviere relación con la descomposición del cadáver. Al no presentarse prueba de un acto negligente, no es necesario hacer una determinación de si el daño hubiese sido previsible como resultado de la alegada acción u omisión. Por lo tanto, no se puede concluir que un acto u omisión que no logro probarse, tenga como consecuencia el daño causado, en este caso, la descomposición del cadáver de la señora Marengo.
La parte demandante-apelante decidió someter su caso con la prueba antes mencionada. Al estudiar el segundo informe de conferencia entre abogados, nos percatamos de la abundante prueba testifical y documental que dicha parte pretendía ofrecer y que finalmente no fue traída al juicio. Por ejemplo, no se ofreció evidencia del funcionamiento de las neveras del hospital; prueba sobre el manejo específico del cadáver de la señora Marengo; aparte de que no se trajo un patólogo o médico forense que tuviera el peritaje en el manejo de cadáveres en un hospital, y qué factores, si alguno, provocan la descomposición de los mismos.
De la prueba que sí fue presentada, es forzoso concluiir que procede la desestimación de la demanda, tal y como lo resolviera el Tribunal de Primera Instancia. En esta etapa de los procedimientos, el tribunal estaba autorizada aquilatar la prueba presentada y formular su apreciación de los hechos. No encontramos que el tribunal haya actuado con pasión, prejuicio o parcialidad o que haya cometido error manifiesto en la apreciación de la prueba, por lo que no intervendremos con su apreciación. Rolón García v. Charlie Car Rental, Opinión de 2 de junio de 1999, 99 J.T.S. 89; Romero Arroyo y otros v. Estado Libre Asociado de Puerto Rico, supra; Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987). Por lo tanto, no se cometió el error señalado.
Y
Por todo lo expuesto, confirmamos la sentencia apelada.
Lo acordó y ordena el Tribunal, y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General