Urgell Cuebas, Juez Ponente
*579 TEXTO COMPLETO DE LA SENTENCIA
La Sra. Miriam Camacho Rodríguez comparece ante nos mediante el recurso de autos y solicita la revisión de la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 15 de octubre de 1996. Mediante la misma, dicho foro declaró sin lugar la demanda de divorcio por la causal de trato cruel presentada por la Sra. Camacho Rodríguez contra el Sr. José Manuel Pérez Pérez. Al mismo tiempo, el Tribunal de Primera Instancia declaró con lugar la reconvención instada por el Sr. Pérez Pérez y decretó la disolución del matrimonio, adjudicándole a éste la custodia de los dos hijos procreados por las partes.
Examinado el expediente ante nuestra consideración, confirmamos la sentencia apelada.
I
El Sr. Pérez Pérez y la Sra. Camacho Rodríguez contrajeron matrimonio en el año 1978. Durante la vigencia de dicho matrimonio, las partes procrearon dos hijos, José Arturo y Rocío. Diferencias surgidas entre las partes y, según la evidencia creída por el tribunal a quo, originadas por el comportamiento de la Sra. Camacho Pérez, obligaron al Sr. Pérez Pérez a abandonar el hogar conyugal en julio de 1994. Al mes siguiente, la Sra. Camacho Rodríguez instó una demanda de divorcio por la causal de trato cruel. El Sr. Pérez Pérez contestó la demanda oportunamente y presentó una reconvención en la que negó las imputaciones hechas por su esposa y alegó que había sido él la víctima de trato cruel por parte de su esposa.
El Tribunal de Primera Instancia celebró la vista del caso en su fondo los días 15, 22, 28 y 31 de mayo, y 17 de junio de 1996. A dichas vistas comparecieron las partes debidamente representadas por sus abogados y la Leda. Sandra Valentín Díaz, Procuradora de Relaciones de Familia, como defensora judicial de los menores hijos de las partes. Durante el proceso, el tribunal a quo tuvo la oportunidad de examinar el testimonio de diversos testigos, que incluyeron a las partes, maestros del menor José Arturo, trabajadores sociales, etc. Asimismo, dicho foro examinó evidencia demostrativa, como fotografías y cintas de vídeo, que mostraban a la demandante compartiendo en lugares públicos con el Sr. Hérmenes Montalvo Ortiz, ello en presencia de los hijos de la primera. Las personas que tomaron estas videocintas y fotografías también fueron objeto de interrogatorios por los abogados de las partes. Es menester mencionar que el Tribunal de Primera Instancia tuvo también la oportunidad de examinar evidencia documental, que incluyó diversas denuncias de violencia doméstica hechas por las partes al amparo de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, 8 L.P.R.A. sec. 601, et seq., y copias de algunos cuadernos de trabajo y libretas del niño José Arturo en los que sus maestras habían hecho anotaciones dirigidas a la madre de éste, debido al pobre desempeño académico del joven.
Una vez aquilatada esta considerable cantidad de evidencia, el 15 de octubre de 1996, el Tribunal de Primera Instancia emitió la sentencia aquí apelada. Dicho foro determinó que las alegaciones y testimonio presentados por la Sra. Camacho Rodríguez no merecían ninguna credibilidad, por lo que declaró sin lugar la demanda y con lugar la reconvención del Sr. Pérez Pérez. El tribunal a quo concluyó que el Sr. Pérez Pérez había sido víctima de agresiones verbales y físicas por parte de su esposa quien, además, no atendía las necesidades escolares de su hijo José Arturo. También determinó probado que la demandante, estando vigente su matrimonio con el Sr. Pérez Pérez, sostuvo una relación de íntima amistad con el Sr. Hérmenes Montalvo Ortiz, con quien se había reunido en diversos lugares públicos a consumir bebidas alcohólicas, todo en presencia de los menores hijos de la primera. Ante este cuadro fáctico, el Tribunal de Primera Instancia otorgó la custodia de los niños al padre de éstos e impuso a la demandante el pago de una pensión alimentaria de $200 *580 mensuales. Al así resolver el asunto de la custodia, el tribunal a quo rechazó el informe que rindiera la trabajadora social asignada al caso, informe que dicho foro consideró incompleto y merecedor de poca confianza.
Inconforme con el dictamen emitido, la Sra. Camacho Rodríguez apela ante nos e imputa al Tribunal de Primera Instancia la comisión de diversos errores, relacionados principalmente con la apreciación de la prueba. Mediante Resolución de 17 de enero de 1997 concedimos el plazo de cinco (5) días a la parte apelante para que sometiera un proyecto de exposición narrativa de la prueba ante el Tribunal de Primera Instancia para su aprobación, y diez (10) días a la parte apeláda para que presentara sus objeciones a dicho proyecto. Las partes, sin embargo, luego de un alargado trámite procesal, no pudieron llegar a un acuerdo sobre la exposición narrativa. Ante estas circunstancias, concedimos permiso a la parte apelante para que sometiera una transcripción de la vista del caso en su fondo ante el Tribunal de Primera Instancia.
Luego de examinar los cinco (5) volúmenes que conforman la transcripción de la vista, y contando con los alegatos de las partes, estamos en posición de resolver.
II
En los primeros dos señalamientos de error, la apelante alega que incidió el Tribunal de Primera Instancia al hacer una apreciación errónea de la prueba y, en consecuencia, declarar sin lugar su demanda de divorcio y con lugar la reconvención presentada por el Sr. Pérez Pérez. Antes de pasar a examinar este señalamiento de error, debemos repasar la doctrina vigente en cuanto a la intervención de foros apelativos con las determinaciones del Tribunal de Primera Instancia, así como los factores a considerar en los casos de divorcio por trato cruel.
Es norma harto repetida que, salvo casos excepcionales, los foros apelativos no intervendremos con las determinaciones de hechos realizadas por los tribunales de primera instancia. Ello es así debido a que es el juzgador de los hechos quien tuvo lá oportunidad de examinar la totalidad de la prueba, lo que incluye observar a los testigos y apreciar su comportamiento o "demeanor” en la silla testifical. López v. I.T.T. Intermedia, 142 D.P.R. _ (1997), 97 J.T.S. 42; Quiñones López v. Manzano Pozas, 141 D.P.R. _ (1996), 96 J.T.S. 95; Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987); Vélez v. Srio. de Justicia, 115 D.P.R. 533 (1984).
Debemos considerar, además, que lo que constituye trato cruel es un cuadro que debe ser determinado caso a caso por los tribunales de justicia. Al no existir una definición detallada, precisa y sistemática de esta causal de divorcio, es necesario estudiar y ponderar las circunstancias específicas de cada caso, prestando particular atención, entre otras cosas, al medio social, grado de cultura de los cónyuges y la sensibilidad de las partes involucradas. Código Civil, Art. 96, 31 L.P.R.A. sec. 321; Sánchez Cruz v. Torres Figueroa, 123 D.P.R. 418 (1989).
Según la apelante, el Tribunal de Primera Instancia hizo una apreciación errónea de la prueba al declarar sin lugar su demanda de divorcio, pues fue ella la víctima del trato cruel de su esposo, quien alegadamente la agredió verbal y físicamente en múltiples ocasiones.
La prueba desfilada y no controvertida por la demandante, sin embargo, presenta otro cuadro. Esta prueba dejó demostrado que la demandante frecuentó lugares públicos con el Sr. Hérmenes Montalvo Ortiz y que dichos lugares se dedican principalmente al expendio de bebidas alcohólicas. De hecho, el testimonio de la propia Sra. Camacho Rodríguez, según confirmado por el Sr. Montalvo Ortiz y las fotografías y vídeos tomados por el Sr. Héctor Delgado Rodríguez, demuestran que ella acudió a dichos lugares acompañada de sus hijos menores de edad y que, frente a ellos, consumió bebidas alcohólicas en compañía del Sr. Montalvo Ortiz.
*581 Por otro lado, el Tribunal de Primera Instancia, luego de escuchar el testimonio de la Sra. Camacho Rodríguez, del Sr. Pérez Pérez y de otros testigos, concluyó que era la demandante quien agredía físicamente y de palabras a su esposo, situación que culminó en una acusación de violencia doméstica contra la Sra. Camacho Rodríguez y que obligó al Sr. Pérez Pérez a abandonar el hogar conyugal en julio de 1994.
Asimismo, los alegados problemas del Sr. Pérez Pérez con el alcohol no fueron sustentados con otro testimonio que no fuera el de la apelante, pues otros testimonios sobre el alegado alcoholismo del apelado rechazaron el mismo. Además, surgió prueba durante el juicio a los efectos de que la apelante había coercionado a su hijo para que éste dijera que su padre era un “borrachón”.
Luego de analizar las circunstancias particulares del caso, la sala sentenciadora determinó dar mayor credibilidad al testimonio del demandado, Sr. Pérez Pérez. Todas las conclusiones de aquel foro se encuentran sustentadas por testimonios vertidos durante el juicio en su fondo. La Sra. Camacho Rodríguez no ha presentado prueba, ni nos ha colocado en posición de variar esas conclusiones. No vemos en las determinaciones del Tribunal de Primera Instancia indicios de pasión, prejuicio o parcialidad de naturaleza alguna que nos muevan a intervenir con las mismas. López v. I.T.T. Intermedia, supra. Concluimos que los primeros dos errores señalados no fueron cometidos.
Como tercer señalamiento de error, alega la apelante que incidió el Tribunal de Primera Instancia al concederle a su ex-esposo la custodia de los menores habidos durante el matrimonio. A esos afectos, alega, entre otras cosas, que el pobre desempeño académico del niño José Arturo se debió a la mínima supervisión que le brindaba su abuela paterna y que el Sr. Pérez Pérez interceptaba las comunicaciones que le enviaban las maestras del Colegio Carmen Sol, donde el joven estudiaba.
En cuanto a la concesión de la custodia de menores, el Tribunal Supremo ha señalado en varias ocasiones que los tribunales de primera instancia deben analizar múltiples factores antes de tomar una decisión. Entre dichos factores se cuentan: la preferencia del menor, su sexo, edad, salud mental y física, la habilidad de las partes para satisfacer las necesidades afectivas, morales y económicas del menor, grado de ajuste al hogar, la escuela y la comunidad en que viven los padres, interrelación del menor con sus padres, hermanos y demás familiares, etc. La determinación final debe estar guiada por los mejores intereses y el mayor bienestar de los menores. Código Civil, Art. 107, 31 L.P.R.A. sec. 383; Nudelman v. Ferrer Bolívar, 107 D.P.R. 495 (1978); Sterzinger v. Ramírez, 116 D.P.R. 762 (1985); Sánchez Cruz v. Torres Figueroa, supra. Examinemos las alegaciones de la apelante a la luz de la prueba desfilada y del derecho antes expuesto.
Durante la celebraqión del juicio en su fondo en el caso de autos, quedó demostrado que la Sra. Camacho Rodríguez es incapaz de proveer a su hijo José Arturo la supervisión y consejería necesarias para que el niño pueda adelantar adecuadamente en sus estudios de escuela primaria. Así surgió del testimonio vertido por una maestra del Colegio Carmen Sol, así como de las numerosas notas hechas por ésta en los cuadernos y libretas del joven José Arturo, muchas de las cuales no fueron contestadas o atendidas por la Sra. Camacho Rodríguez. La única prueba desfilada de que el Sr. Pérez Pérez “interceptaba” estas comunicaciones fue la palabra de la Sra. Camacho Rodríguez. Por otro lado, quedó demostrado que el Sr. Pérez Pérez visitaba con frecuencia la escuela de su hijo para verificar sobre su desempeño, además de ayudarlo en sus tareas y proyectos cuando esa ayuda le era solicitada. Toda esta evidencia fue examinada y aquilatada por el Tribunal de Primera Instancia. Dicho foro concluyó que la demandante no es la persona más adecuada para atender a los menores. Tampoco la Sra. Camacho Rodríguez ha presentado, ante nos prueba alguna que nos lleve a alterar esta determinación. Tampoco debemos olvidar, como ya mencionamos, que la apelante se ha destacado en dar ejemplos poco edificantes a sus hijos. Si unimos estos factores al hecho de que el Sr. Pérez Pérez se encuentra en mejor posición económica de proveer las necesidades de sus hijos, debemos concluir que el Tribunal de Primera *582 Instancia no incidió al otorgar la custodia de éstos a su padre.
No debemos pasar por alto el hecho de que el informe de la Trabajadora Social recomendaba que la custodia de los menores fuese adjudicada a la madre de éstos. Sin embargo, la confiabilidad de ese informe fue cuestionada durante el juicio y el mismo fue finalmente rechazado por el tribunal a quo. Según la sentencia apelada, la Trabajadora Social no mencionó en su informe a los colaterales entrevistados, ni visitó los lugares que la Sra. Camacho Rodríguez frecuentaba junto al Sr. Montalvo Ortiz. Tampoco visitó la iglesia que la apelante alegó que estaba asistiendo. Ninguno de estos señalamientos fue refutado por la Sra. Camacho Rodríguez en su alegato. Los informes sociales son meras herramientas para ayudar al tribunal a tomar la mejor decisión. No son por sí solos, decisivos o determinantes. Si así fuera, no sería necesario celebrar vistas y bastaría con que el tribunal acogiera sin más la recomendación del informe. Es evidente que el tercer error señalado no fue cometido.
Como cuarto error, alega la apelante que incidió el Tribunal de Primera Instancia al admitir prueba en contra de lo dispuesto en las Reglas de Evidencia, 32 L.P.R.A. Ap. IV. En específico, señala la Sra. Camacho Rodríguez que dicho foro erró al admitir en evidencia copias de los cuadernos y libretas del menor José Arturo, las fotografías y vídeos tomados por el Sr. Héctor Delgado Rodríguez y el testimonio de este último en cuanto al contenido de dichas fotografías y vídeos. Alega, además, que el Tribunal de Primera Instancia permitió que el contrainterrogatorio a ella se ampliara más allá de la materia objeto del examen directo.
En cuanto a las copias de libretas y cuadernos debemos señalar que, durante el juicio, la representación legal de la Sra. Camacho Rodríguez objetó la presentación de las mismas simplemente por el hecho de que eran copias. El Tribunal de Primera Instancia correctamente declaró sin lugar la objeción, pues las Reglas de Evidencia establecen que un duplicado de un documento es tan válido como el original, a menos que sea la autenticidad del propio documento lo que esté en controversia. Regla 73 de Evidencia, 32 L.P.R.A. Ap. IV. R.73. Además, las objeciones, para ser consideradas, deben ser específicas, levantarse a tiempo y por el fundamento correcto. Es tardío el planteamiento que se formula ante nos en la etapa apelativa, aunque el fundamento sea correcto, si no se hizo oportunamente ante el tribunal que celebró la vista. Pueblo v. Chévere Heredia, 139 D.P.R. _ (1995), 95 J.T.S. 115; Pueblo v. Luzón, 113 D.P.R. 315 (1982).
Por otro lado, la autenticidad de las copias fue verificada por la propia apelante, quien identificó su firma en algunas de ellas, además de describir acertadamente las notas como el mecanismo utilizado por las maestras de su hijo para enviarle mensajes acerca del desempeño escolar de éste. También la profesora Irma Sánchez, maestra en el Colegio Carmen Sol, identificó su létra en los documentos en cuestión. Habiendo sido autenticados los documentos por la persona que los redactó, así como por la parte contra quien se ofrecían, no erró el Tribunal de Primera Instancia al admitirlos. Regla 76 de Evidencia, 32 L.P.R.A. Ap. IV, R.76.
Finalmente, debemos recordar que era la parte aquí apelante quien tenía el control sobre los originales de los documentos en cuestión y no los presentó ante el Tribunal de Primera Instancia, pues el contenido de los mismos le era claramente adverso. Su alegación de que no lo hizo porque no le fueron requeridos, además de no ser oportuna, no nos convence.
Sobre la admisibilidad del testimonio presentado por el Sr. Héctor Delgado, así como de las fotografías y vídeos tomados por éste, debemos concluir que los señalamientos de error que hace la Sra. Camacho Rodríguez son patentemente inmeritorios. En primer lugar, los vídeos y fotografías eran evidencia pertinente al caso. Los mismos no hacen sino confirmar gráficamente lo que la apelante y el Sr. Montalvo Ortiz admitieron durante el juicio, que ambos compartieron en lugares públicos y que consumieron bebidas alcohólicas frente a los hijos de la apelante. No cabe cuestionar la pertinencia de esta prueba al caso de autos. Regla 18 de Evidencia, 32 L.P.R. *583 A. Ap. IV, R.18.
En cuanto al testimonio del Sr. Delgado, debemos señalar que declaró como perito investigador forense, lo que no fue objetado por la parte aquí apelante. El Sr. Delgado fue llamado a declarar, tanto sobre las fotografías y vídeos que mostraban a la Sra. Camacho Rodríguez y al Sr. Montalvo Ortiz durante sus reuniones en lugares públicos, como sobre la forma en que dicha evidencia fue obtenida y preparada. Sin embargo, el Sr. Delgado podía testificar, no sólo como perito, sino también como testigo de algunas de esas reuniones, pues fue él quien tomó los vídeos de las mismas y presenció los hechos. Por tanto, era natural que éste declarara sobre el contenido de las videocintas y fotografías. El Sr. Delgado sirvió así como perito de ocurrencia que, según la jurisprudencia, es aquel que de antemano ha obtenido conocimiento extrajudicial de los hechos a través de observaciones directas o por participación en eventos subsiguientemente pertinentes a la litigación. San Lorenzo Trading, Inc. v. Hernández, 114 D.P.R. 704 (1983); Boitel Santana v. Cruz, 129 D.P.R. 725 (1992). No erró el Tribunal de Primera Instancia al admitir el testimonio de un perito que, además', fue testigo presencial de los hechos en controversia.
Por último, y en cuanto al señalamiento de la apelante en el sentido de que el juez que presidió el juicio en su fondo incidió al permitir en su contrainterrogatorio preguntas sobre materia que no fue objeto del interrogatorio directo, debemos señalar que la Regla 43(C) de Evidencia, 32 L.P.R.A. Ap. IV, R. 43(C), dispone con meridiana claridad:

“El juez que preside un juicio o vista tendrá control y amplia discreción sobre el modo en que la evidencia es presentada y los testigos son interrogados con miras a que la evidencia sea presentada en la forma más efectiva posible para el esclarecimiento de la verdad, velando por la mayor rapidez de los procedimientos y evitando dilaciones innecesarias. ”

La Regla 43 (F) de Evidencia va más allá y dispone que, durante el contrainterrogatorio, “el tribunal puede... en el ejercicio de su discreción, permitir preguntas sobre otras materias como si se tratase de un examen directo. ” 32 L.P.R.A. Ap. IV, R. 43(F).
La lectura de la transcripción del juicio en su fondo demuestra que el tribunal a quo no actuó irrazonablemente al permitir preguntas sobre materia que no fue objeto del interrogatorio directo. Lejos de ello, la flexibilidad permitida fue esencial para lograr un cuadro más completo de la situación de la demandada y, particularmente, sobre su trato con su ex-esposo y sus hijos. Al así actuar, no incidió el Tribunal de Primera Instancia.
Como último señalamiento de error, la apelante alega que incidió el Tribunal de Primera Instancia al declarar sin lugar una moción en la que solicitó la inhibición de la defensora judicial de los menores en el caso, la Leda. Sandra Valentín Díaz. Según la apelante, a través del proceso, la Leda. Valentín Díaz se mostró prejuiciada en su contra y parcializada a favor del Sr. Pérez Pérez.
Nuevamente estamos ante un señalamiento de error frívolo. Si bien la Leda. Valentín Díaz fungía en aquel momento como Procuradora de Relaciones de Familia, dentro del caso de autos sirvió exclusivamente como defensora judicial de los menores, responsabilidad que le fue delegada por el Tribunal de Primera Instancia. Como defensora judicial, venía obligada a representar los intereses de sus clientes, no a adjudicar la controversia. Pedir su inhibición es, por tanto, totalmente improcedente.
Tal y como señaló la propia Leda. Valentín Díaz durante la discusión de la Moción de Inhibición ante el Tribunal de Primera Instancia, lo que procedía en todo caso era descualificarle si su participación o proceder en *584 el caso eran contrarios a los Cánones de Etica Profesional, 4 L.P.R.A. Ap. IX. Nada en el expediente ante nuestra consideración apunta en esa dirección. Todo lo contrario, la Leda. Valentín Díaz desempeñó su cargo con la mayor responsabilidad, mostrando un gran interés en lograr el mejor bienestar para sus defendidos. Así lo concluyó el Tribunal de Primera Instancia en su sentencia, apreciación con la que coincidimos completamente. Concluimos que el quinto error señalado por la apelante tampoco fue cometido.
III
Por los fundamentos antes expuestos, se confirma la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 15 de octubre de 1996.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General