DIANA M. BOITEL SANTANA, demandante y peticionaria, *v.* DRA. ROSA I. CRUZ y OTROS, demandados y recurridos.

*Número:* CE-89-423 *Resuelto:* 30 de enero de 1992

*Ángel L. Tapia Flores* y *F. Ariel Avilés Rodríguez*, abogados de la peticionaria; *Francisco Aponte Pérez*, abogado de los recurridos.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Hoy nos toca expresarnos sobre la aplicación de la norma procesal expuesta en *Rivera Alejandro v. Algarín*, 112 D.P.R. 830 (1982), a una situación en que los doctores demandados no sólo intervinieron con la paciente demandante, sino que además, compartían oficinas, gastos, ganancias y pacientes, ofreciendo sus servicios a las personas que acudían a sus oficinas.

I

*Los hechos*

El 2 de junio de 1988, la Sra. Dina Boitel Santana, por sí y en representación de su hija menor, Andrea Victoria Cabrera Boitel, presentó ante el Tribunal Superior, Sala de Bayamón, una reclamación de daños y perjuicios —causados por impericia médica— contra la Dra. Rosa Ileana Cruz y el Dr. Pedro J. Beauchamp.[1]

En dicha demanda se alegó, en síntesis, que los demandados eran, a la fecha de la presentación de la demanda y cuando intervinieron con la peticionaria, médico-ginecólogos y obstetras con especialidad en endocrinología reproductiva e infertilidad. Operaban y funcionaban como una sociedad profesional, compartiendo gastos, ganancias al

---

[1] También incluyeron como demandada de nombre desconocido a la compañía de seguros de dichos doctores, John Doe Insurance Company, y a la Administración del Fondo de Compensación al Paciente. Más tarde, se enmendó la demanda para sustituir la compañía de seguros con nombre desconocido por la Corporación Insular de Seguros y el Sindicato de Aseguradores de Responsabilidad Profesional de Médicos.

cincuenta por ciento (50%), participaciones y pacientes en su oficina sita en Bayamón.([2])

Continuó alegando la demandante que fue paciente de los doctores Cruz y Beauchamp desde octubre de 1986 hasta junio de 1987, siendo atendida principalmente por la doctora Cruz. A mediados del mes de abril, la parte demandada diagnosticó que la señora Boitel Santana no podía quedar embarazada porque tenía una obstrucción en las trompas de falopio (*fallopian tubes*). Por lo tanto, le recomendó someterse a una intervención quirúrgica para eliminar la obstrucción y poder quedar embarazada. En esa ocasión la demandante le informó a la doctora Cruz que su próxima menstruación sería el 3 de mayo de 1987. La señora Boitel Santana aceptó someterse a la intervención quirúrgica para eliminar la obstrucción (laparatomía).

Como honorarios, pagó a los doctores Cruz y Beauchamp la suma de dos mil quinientos dólares ($2,500). El 12 de mayo de 1987, la demandante fue ingresada y admitida al Hospital San Pablo. La doctora Cruz la intervino quirúrgicamente el 13 de mayo de 1987. En dicho hospital fue vista y atendida en dos (2) ocasiones por el codemandado Beauchamp, el 14 y 15 de mayo. Éste fue quien la dio de alta el 15 de mayo.

Posteriormente, la demandante señora Boitel Santana no se sintió bien y visitó al Dr. José A. Paéz González, un médico-generalista, quien le ordenó varias pruebas de embarazo. Éstas dieron positivo. Se le practicó un sonograma el 15 de junio de 1987 que reflejó un embarazo de 10.2 semanas, por lo que al momento de la operación (laparatomía) tenía 6.2 semanas de embarazo. El embarazo culminó el 21 de enero de 1988 con el nacimiento de la niña Andrea Victoria.

Luego de contestada la demanda y durante el descubri-

---

([2]) Con posterioridad a la presentación de la demanda, se disolvió la referida sociedad.

miento de prueba, se procedió a tomarle deposición a los doctores Cruz y Beauchamp. Fue durante la toma de deposición de este último que surgió el incidente que hoy nos ocupa. Dicha deposición quedó interrumpida cuando los abogados de la parte demandada le instruyeron al doctor Beauchamp que no contestara las preguntas del abogado de la demandante. Alegaron que las preguntas requerían que diera opiniones periciales y que él estaba allí como parte, no como perito. La parte demandante suspendió la deposición y, al amparo de la Regla 34 de Procedimiento Civil, 32 L.P.R.A. Ap. III, solicitó del tribunal que se le ordenara al codemandado doctor Beauchamp contestar las preguntas en una próxima deposición y la imposición de sanciones.

El 16 de febrero de 1989, el tribunal declaró con lugar la moción. La parte demandada solicitó reconsideración basándose en lo resuelto en *Rivera Alejandro v. Algarín*, supra. Arguyó que las opiniones periciales solicitadas estaban fuera del alcance del descubrimiento de prueba, ya que versaban sobre el tratamiento brindado por otro médico demandado y que el doctor Beauchamp no tomó parte alguna ni presenció el proceso objeto del descubrimiento.

El 10 de marzo de 1989, el tribunal reconsideró su anterior Orden de 16 de febrero y denegó la moción bajo la Regla 34 de Procedimiento Civil, *supra*, presentada por la parte demandante. Señaló que de querer continuar la demandante con la deposición, tenía que limitar sus preguntas al "tratamiento, diagnóstico y demás participaciones" del doctor Beauchamp con la demandante. De esta determinación la parte demandante solicitó reconsideración. El tribunal se reafirmó en su decisión. Señaló que en el presente caso el doctor Beauchamp "no tuvo intervención, participación ni conocimiento del tratamiento ni presenció el proceso operatorio a parte [sic] de sus dos visitas pos[t o]peratorias a la demandante, las cuales no son objeto de reclamación ...".

Inconforme con esta decisión, la demandante presentó una petición de *certiorari* en la que alegó que el tribunal de instancia erró al interpretar la norma de *Rivera Alejandro v. Algarín*, supra. Argumentó que el doctor Beauchamp se había "lucrado y beneficiado de lo cobrado por su 'socia' por [la] operación y por ... su arreglo de socio y práctica, [y que éste] responde a la Demandante en forma solidaria por la culpa o negligencia de su socia ...". Continuó argumentando que, al ser ambos responsables por el tratamiento ofrecido, deben estar sujetos a que sean interrogados al respeto. También alegó que el doctor Beauchamp intervino con la demandante en la fase post operatoria, incluso el darle de alta, y que paraefectuar esto tuvo que necesariamente evaluar la condición de la paciente y la intervención a que fue sometida. De esto deduce que el doctor Beauchamp participó en el proceso, que no estuvo ajeno totalmente a las actuaciones de la doctora Cruz y que, ante estas circunstancias, incidió el tribunal de instancia al interpretar y aplicar el caso *Rivera Alejandro v. Algarín*, supra.

Arguyó, además, la parte demandante que en la toma de deposición las partes estipularon lo siguiente:

> "Las objeciones aunque no se levanten no se tendrán por renunciadas. El deponente contestará las preguntas; *si hay alguna objeción no hay tampoco ningún obstáculo* en que el abogado haga constar la objeción y el deponente entonces contestará la pregunta." (Énfasis suplido.)

Esta estipulación, de acuerdo con la parte demandante peticionaria, requería que el deponente contestara las preguntas luego de que se hicieran constar las objeciones.

Decidimos revisar y expedimos el auto.

## II

*Normas generales sobre los peritos de ocurrencia y el descubrimiento de prueba*

■ En *San Lorenzo Trad., Inc. v. Hernández*, 114 D.P.R. 704, 718 (1983), identificamos tres (3) clases de peritos: (1) *peritos de ocurrencia*, que son "aquellos [sic] que de antemano han obtenido conocimiento extrajudicial de los hechos a través de observaciones directas o por participación en eventos subsiguientemente pertinentes a la litigación"; (2) *peritos en general*, que son "los que no están relacionados con los hechos singulares en controversia", y (3) *peritos intermedios*, que "[c]omprende a quienes, debido a los estudios específicos que han efectuado en previsión del futuro o durante el proceso, están familiarizados con los hechos particulares del caso".

■ Con relación a la distinción entre un perito y un testigo, señalamos que casi siempre este último es casual y "sólo declar[a] lo percibido por sus sentidos y relat[a] hechos". *San Lorenzo Trad., Inc. v. Hernández*, supra, pág. 712. También agregamos que el testimonio de un testigo presencial de hechos como regla general no es reemplazable, mientras que el de un perito sí. Íd., pág. 713.

■ Ahora bien, la Regla 23.1(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, es la que regula el descubrimiento de prueba pericial. Dicha regla limita el descubrimiento de prueba pericial a peritos que hayan sido consultados por la otra parte y que ésta intente presentar en el juicio, Regla 23.1(c)(1) de Procedimiento Civil, 32 L.P.R.A. Ap. III, y a peritos que la otra parte ha contratado "con anterioridad al pleito o en preparación para el juicio y el cual no habrá de ser llamado a testificar ...". Regla 23.1(c)(2) de Procedimiento Civil, 32 L.P.R.A. Ap. III. El propósito primordial de

permitir el descubrimiento de prueba pericial es que la parte contraria pueda prepararse de forma adecuada para contrainterrogar efectivamente al perito y refutar su testimonio. 8 *Wright and Miller, Federal Practice and Procedure* Sec. 2029 (1970); J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1985, Vol. II, págs. 130–132.

■ De otra parte, el descubrimiento de prueba con relación a testigos se rige por la Regla 23.1(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III, permitiéndose el "descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente ...". El propósito de esta norma liberal de descubrimiento es que aflore la verdad de lo ocurrido, evitando así los "inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio". *Sierra v. Tribunal Superior*, 81 D.P.R. 554, 560 (1959). Véanse: *General Electric v. Concessionaires, Inc.*, 118 D.P.R. 32, 38 (1986); *Lluch v. España Service Sta.*, 117 D.P.R. 729, 743 (1986).

■ Ahora bien, el *perito de ocurrencia* tiene conocimiento de los hechos por haberlos percibido, posee información irreemplazable. Este tipo de testigo se distingue del "ordinario en que utiliza su entrenamiento especial al percibir los sucesos .... Como regla general, [a estos peritos] se [les] consideran testigos ordinarios a todos los efectos ...". *San Lorenzo Trad., Inc. v. Hernández*, supra, pág. 718. Al referirnos específicamente al médico demandado, que a su vez es *perito de ocurrencia*, en *Rivera Alejandro v. Algarín*, supra, pág. 836, expresamos que éste "está sujeto a descubrimiento de toda materia no privilegiada y que sea pertinente a la controversia, aunque se trate de una opinión". Señalamos que la razón para esta amplitud en el descubrimiento es que dicho "médico de-

mandado es un testigo de los hechos sobre los cuales se le pregunta". *Rivera Alejandro v. Algarín*, supra, pág. 836.

 Otra es la situación cuando lo que se intenta es obtener las opiniones periciales de un médico demandado sobre asuntos como el diagnóstico y tratamiento brindados por otro médico codemandado, cuando el primero no ha participado en los procesos llevados a cabo por el codemandado que, a su vez, son objeto de descubrimiento. Al no estar frente a un *perito de ocurrencia* (perito-testigo), el alcance del descubrimiento de prueba es mucho menor; se rige por la Regla 23.1(c) de Procedimiento Civil, *supra*. En estas circunstancias y "a modo de excepción, están fuera del alcance del descubrimiento de prueba las opiniones sobre el tratamiento brindado por otro médico demandado, si es que el primero no tomó parte alguna ni presenció el proceso". *Rivera Alejandro v. Algarín*, supra, pág. 837.

## III

*Aplicación de las normas de derecho a los hechos*

La parte demandante peticionaria arguye que la norma esbozada en *Rivera Alejandro v. Algarín*, supra, fue erróneamente interpretada. No le asiste la razón. Analicemos los hechos en el caso de autos.

Según surge de la demanda y los escritos de las partes, los actos de negligencia que se le imputan a la parte demandada pueden resumirse de la manera siguiente: diagnóstico equivocado que dio lugar a que la codemandante Boitel Santana fuera sometida a una intervención quirúrgica innecesaria. En la deposición tomada al doctor Beauchamp, éste declaró que conoció a la señora Boitel Santana "en la visita que le hi[zo] en el primer día pos[t o]peratorio". No la había visto en la oficina. La examinó en sólo dos (2) ocasiones: el día después de la operación, el 14 de mayo de 1987, y al otro día, cuando la dio de alta. Al

examinarla, tenía ante sí sólo "el expediente ... físico y lo que decía el expediente del hospital". Antes de que lo emplazaran no había examinado el récord de la oficina de la paciente.

La controversia surgió al tratar, la representación legal de la demandante, de preguntarle al doctor Beauchamp su opinión pericial sobre ciertos datos que aparecían en el récord médico de la oficina. Como acertadamente expresa el tribunal de instancia, de la transcripción de la deposición se desprende que el doctor Beauchamp no "tuvo intervención, participación ni conocimiento del tratamiento ...". Tampoco presenció la operación. Con relación a la codemandante Boitel Santana, su intervención se limitó a dos (2) visitas post operatorias y un examen del expediente del hospital. Sobre estas dos (2) visitas no hay alegación de actos de negligencia. Tampoco se ha alegado que del expediente del hospital surgieran datos de la posible negligencia.

Al amparo de la norma establecida en *Rivera Alejandro v. Algarín*, supra, no procedía, pues, que se obligara al doctor Beauchamp a prestar testimonio pericial sobre los actos realizados por la codemandada doctora Cruz en los cuales él no participó. Con relación a éstos, el doctor Beauchamp no era *perito de ocurrencia*.

Como podrá observarse de lo antes expuesto, lo que realmente nos está pidiendo la parte demandante es que variemos la norma enunciada en *Rivera Alejandro v. Algarín*, supra, para permitir que el alcance del descubrimiento de prueba en cuanto a un perito codemandado, que no sea *perito de ocurrencia*, se rija por la Regla 23.1(a) de Procedimiento Civil, *supra*, cuando éste comparte gastos, oficinas, ganancias y pacientes con el codemandado a quien se le imputan los actos de negligencia sobre los cuales versará el testimonio pericial.

El doctor Beauchamp no fue testigo de los hechos sobre los cuales se está solicitando su opinión pericial. Su testi-

monio pericial es reemplazable. El hecho de que fuese co-demandado y socio de la codemandada doctora Cruz, no varía la situación.(³) La parte peticionaria no ha aducido razón válida alguna por la cual se deba permitir el descubrimiento de prueba pericial cuando el perito no es uno de ocurrencia. Nada le impide a la parte demandante obtener su propio perito para probar su caso. El tribunal de instancia no se equivocó al interpretar y aplicar la norma de *Rivera Alejandro v. Algarín*, supra.

IV

*La estipulación*

A tenor con lo dispuesto en la Regla 26 de Procedimiento Civil, 32 L.P.R.A. Ap. III, las partes estipularon lo siguiente:

> Las objeciones aunque no se levanten no se tendrán por renunciadas. El deponente contestará las preguntas; *si hay alguna objeción no hay tampoco ningún obstáculo* en que el abogado haga constar la objeción y el deponente entonces contestará la pregunta. (Énfasis suplido.)

Como podrá observarse, los términos de esta estipulación distan mucho de ser claros. Cabe señalar, además, que la estipulación fue propuesta por la representación legal de la parte demandante. De la discusión suscitada en la toma

---

(³) Cabe señalar que aunque en sus escritos la parte demandante hace referencia a la posible responsabilidad de la sociedad compuesta por los doctores Beauchamp y Cruz, y de la supuesta responsabilidad de éstos como socios, no demandó a la sociedad como tal.

Por no estar ante nuestra consideración, no discutiremos el alcance del descubrimiento de prueba pericial, con relación a los socios, cuando lo que se plantea es la responsabilidad de la sociedad. Tampoco resulta necesario que pasemos juicio sobre el alcance del descubrimiento de prueba pericial, cuando se está frente a una alegación de responsabilidad derivativa y se pretende obtener la información pericial de, por ejemplo, un empleado del demandado. Véanse: 8 *Wright and Miller, Federal Practice and Procedure* Sec. 2033, pág. 258 (1970); *Glass v. Rochester General Hospital*, 425 N.Y.S.2d 698, 699 (1980).

de la deposición con respecto a si el doctor Beauchamp venía o no obligado a contestar las preguntas periciales objetadas, se puede colegir que el representante legal de la parte demandante entendía que la estipulación obligaba al deponente a contestar de forma absoluta. Sólo se requería la previa anotación de la objeción. Mientras que, de otra parte, los representantes legales de los demandados arguyeron que no había tal obligación absoluta, que se podía instruir al deponente de no contestar cuando se entendiese que éste no debía hacerlo por estar la pregunta fuera del alcance del descubrimiento de prueba. Entendían que se pretendía preguntar a un *perito de ocurrencia* su opinión pericial sobre hechos que no había percibido o sobre procesos en los que no había participado, contrario esto a la Regla 23.1(c)(1) y (2) de Procedimiento Civil, *supra*, que regula el descubrimiento de prueba pericial. Concluyeron que esta no fue la intención de las partes al suscribir la estipulación.

De ordinario, las estipulaciones dirigidas a salvaguardar las objeciones para el acto del juicio, en caso de que se pretenda hacer uso en evidencia de la deposición, serán respetadas y tendrán fuerza de ley entre las partes. Ahora bien, en el caso de autos, se trata de una objeción que va dirigida a una materia que las propias Reglas de Procedimiento Civil han sustraído de la norma general de descubrimiento de prueba esbozada en la Regla 23.1(a) de Procedimiento Civil, *supra*, y en la Regla 23.1(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III. El descubrimiento de prueba pericial es limitado y está reglamentado por la Regla 23(c) de Procedimiento Civil, *supra*.Siendo la materia objetada en el caso de autos una excepción a la regla general sobre descubrimiento de prueba, y tomando en consideración la totalidad de las circunstancias que rodearon el incidente y los méritos de la objeción planteada, resolvemos, a manera de excepción, que actuó correctamente el foro de instancia al no obligar al de-

ponente a contestar las preguntas periciales objetadas y entrar a evaluar los méritos de la objeción.

Por todo lo antes expuesto, *se dictará sentencia confirmando la resolución recurrida emitida por el Tribunal Superior, Sala Bayamón, el 24 de abril de 1989, y devolviendo el caso para que continúen los procedimientos de forma compatible con esta opinión.*

El Juez Asociado Señor Negrón García disintió sin opinión escrita. El Juez Asociado Señor Rebollo López disintió con opinión escrita. El Juez Asociado Señor Hernández Denton se inhibió.

## – O –

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

El caso de autos es uno sorprendentemente sencillo. La parte demandante citó a uno de los codemandados —el Dr. Pedro J. Beauchamp— para la toma de una deposición en un caso de alegada mala práctica de la medicina. Estando envueltos en el mismo abogados de experiencia en la litigación civil, *éstos llevaron a cabo la estipulación que se ha convertido en parte integral del mencionado mecanismo de descubrimiento de prueba.* La misma, la cual naturalmente se verbaliza en diferentes términos, quedó plasmada de la siguiente manera:

> Las objeciones aunque no se levanten no se tendrán por renunciadas. *El deponente contestará las preguntas;* si hay alguna objeción no hay tampoco ningún obstáculo en que el abogado haga constar la objeción *y el deponente entonces contestará la pregunta.* (Énfasis suplido.) Alegato de la parte demandante-peticionaria, pág. 7 esc. 7.

Realmente no entendemos la posición asumida por la mayoría de los integrantes del Tribunal a los efectos de que

"los términos de esta estipulación distan mucho de ser claros". Opinión mayoritaria, pág. 735. *La primera oración de dicha estipulación, llana y sencillamente, significa que la representación legal del deponente doctor Beauchamp no renunciaba a posteriormente —en la etapa del juicio— poder levantar oportuna objeción a las preguntas que se le hicieran a éste durante la deposición por el mero hecho de así no haberlo hecho durante la toma de la misma.*

Ello no obstante, y con el propósito de establecer aún más claramente las "reglas del juego", mediante la *segunda oración* las partes estipularon que, aun cuando se verbalizara la objeción durante la toma de la deposición, *el deponente venía en la obligación de contestar todas y cada una de las preguntas que se le hicieran; dicha obligación, como hemos podido notar, se hace constar en dos (2) ocasiones distintas en la mencionada segunda oración.*

La referida estipulación es una, repetimos, que se lleva a efecto *a diario* en las oficinas de los abogados que se dedican a la litigación civil. La misma es una que no sólo es enteramente válida sino que no atenta contra interés público alguno. Dicha estipulación persigue varios objetivos fundamentales, a saber: permitir que la deposición que se lleva a efecto sea lo más amplia y fructífera posible; garantizarle, no obstante, a la parte contraria el derecho a objetar, durante la vista en su fondo del caso, cualquier evidencia inadmisible; *y, sobre todo, evitar lo que precisamente ha sucedido en el presente caso, esto es, la dilación innecesaria de los procedimientos judiciales.*

La Opinión mayoritaria incomprensiblemente complica los procedimientos a nivel de instancia en lugar de agilizarlos; tal parece que se ha olvidado el *sabio mandato* contenido en la Regla 1 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) a los efectos de que las mismas se "interpretarán de modo que garanticen una solución *justa, rápida y económica* de todo procedimiento". (Énfasis suplido.) Al no poner en vigor y, por el contrario, hacer inoficiosa e

inoperante la estipulación en controversia, el Tribunal le hace un flaco servicio a la práctica de la profesión en el área de la litigación. Ello así por cuanto de hoy en adelante, y no obstante haber llevado a cabo una válida estipulación igual o similar a la hoy ante nuestra consideración, algunos abogados podrán caprichosamente suspender la toma de una deposición con el "propósito" de acudir al tribunal de instancia, y luego ante este Foro, para que se les "aclare" si, "por excepción", el testigo —sea éste uno ordinario o un testigo perito "de ocurrencia, en general, o intermedio"— debe o no contestar una línea específica de interrogatorio.

La otra alternativa posible —la de no realizar estipulación alguna— resulta igualmente desastrosa para una sana y eficiente administración de la justicia. La ausencia de estipulación al respecto significará la continua e inevitable interrupción de la toma de una deposición con el propósito de que los tribunales decidan si el deponente viene o no obligado a contestar una pregunta en particular.

Ello, como es obvio, no solamente resultará en una irrazonable e increíble dilación de los procedimientos judiciales sino que implica el gasto innecesario de dinero y tiempo tanto para las partes envueltas en el litigio como para la Rama Judicial. Todo este *trámite, gasto y confusión* en la litigación se hubiera evitado si el Tribunal, en lugar de envolverse en la emisión de una elaborada e innecesaria Opinión, meramente se hubiera limitado a poner en vigor la válida estipulación suscrita por las partes.

En fin, el tiempo, y demás recursos, que este Tribunal le ha dedicado al presente caso muy bien pudo haber sido utilizado en la correcta solución de otro de los muchos recursos que actualmente están pendientes de resolución ante este Foro. Aun cuando resulta doloroso y difícil decirlo, la decisión mayoritaria emitida en el presente caso constituye prueba fehaciente no sólo del interés desmedido, e incomprensible, de publicar ponencias como Opinio-

nes sino que es evidencia de la falta de experiencia en la práctica de la profesión y/o de ausencia de sensibilidad respecto al efecto y consecuencias que, a nivel de instancia, tienen las decisiones que se emiten de parte de algunos de los integrantes del Tribunal.

Por las razones expresadas, revocaríamos la resolución recurrida y dictaríamos una *simple* Sentencia sujetando a las partes al cumplimiento de lo por ellas claramente estipulado.