EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Luis Ángel Suárez Robles<br><br>Recurrido | Certiorari<br><br>2024 TSPR 114<br><br>214 DPR \_\_\_ |

Número del Caso:  CC-2024-0617

Fecha:  28 de octubre de 2024

Tribunal de Apelaciones:

    Panel XI

Oficina del Procurador General:

 Hon. Fernando Figueroa Santiago
 Procurador General

 Lcda. Mabel Sotomayor Hernández
 Subprocuradora General

 Lcda. Jynamarie Kuilan Santana
 Procuradora General Auxiliar

 Lcdo. Orlandy Cabrera Valentín
 Procurador General Auxiliar

Materia:  Resolución del Tribunal con Voto particular disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Luis Ángel Suárez Robles<br><br>Recurrido | CC-2024-0617 | |

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 28 de octubre de 2024.

Por encontrarse igualmente dividido este Tribunal, se provee no ha lugar a la *Petición de Certiorari* y a la *Solicitud en auxilio de jurisdicción* que presentó la Oficina del Procurador General de Puerto Rico.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

El Juez Asociado señor Estrella Martínez está conforme con que no se altere el dictamen del Tribunal de Apelaciones y hace constar la expresión siguiente, a la cual se une la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez:

> "El derecho constitucional de un acusado a confrontar o carearse con quien testifica en su contra, así consagrado en el Art. II, Sec. 11 de la Constitución de Puerto Rico y en la Sexta Enmienda de la Constitución de los Estados Unidos, constituye una de las garantías más fundamentales de nuestro ordenamiento y uno de los pilares sobre los que se apoya la balanza de la justicia en todo procedimiento criminal.
>
> Ahora bien, a pesar de su gran envergadura, se han reconocido algunas excepciones a tal derecho, como, en lo pertinente a este caso, la no disponibilidad del testigo por razón de enfermedad o impedimento mental o físico, así consignada en la

Regla 806 (A)(4) de Evidencia, 32 LPRA Ap. VI. Si bien en el pasado he apoyado el reconocimiento y desarrollo de tal excepción, como en <u>Pueblo v. Lugo López</u>, 214 DPR \_\_\_\_ (2024), 2024 TSPR 83, me veo obligado a hacer constar en esta instancia que, a mi juicio, las circunstancias específicas que están hoy ante nuestra consideración hacen la Regla 806 (A)(4) inaplicable a esta controversia. Me explico.

Conforme lo ha expuesto el Profesor Ernesto Chiesa Aponte, el uso de la excepción antes citada implica que la condición del testigo "está tan deteriorada que no podrá comparecer en un futuro previsible" y que tal determinación no puede tomarse a la ligera, en especial cuando se trata de un testigo de alta importancia. E. Chiesa Aponte, *Reglas de Evidencia comentadas*, 1ª ed., San Juan, Ed. SITUM, 2016, pág. 325. Entiéndase, para que pueda determinarse la no disponibilidad del testigo, debe tratarse de una improbabilidad manifiesta de que este no pueda comparecer en un futuro razonable. Íd.

En este caso, el Ministerio Público solicitó la determinación de no disponibilidad para su testigo de cargo, el agente Ángel L. Rosado Hernández (agente Rosado Hernández), por razón de que este había sido operado debido a una condición cardíaca, por lo que, en conjunto con otros padecimientos, una situación de estrés, como testificar y estar expuesto a un contrainterrogatorio, podía tener un efecto nocivo sobre su salud. El Tribunal de Primera Instancia accedió a tal petitorio. No obstante, estando en posición de evaluar la prueba pericial correspondiente, el Tribunal de Apelaciones acertadamente revocó tras entender que el cuadro clínico del agente Rosado Hernández era estable y, de hecho, mostraba una mejoría, razón por la cual no se justificaba privar al acusado, el Sr. Luis A. Suárez Robles, de su derecho a confrontar tal testimonio en corte.

Sin intención alguna de menospreciar o denegar la validez de las condiciones del agente Rosado Hernández, coincido con la conclusión a la que arribó el foro apelativo intermedio. En efecto, tomando en consideración el estándar normativo previamente descrito, el cuadro clínico presentado no demuestra un deterioro tan severo que la comparecencia a testificar del agente Rosado Hernández fuera una completa imposibilidad. El análisis más objetivo del contexto fáctico de esta controversia, el cual incluye la realidad de que testificar sobre sus funciones es algo rutinario para un agente del orden público con una carrera tan

experimentada como la del agente Rosado Hernández y que, a pesar de su condición, este aún es parte de la fuerza policiaca, obliga a concluir que su estado de salud no le imposibilita, al extremo requerido, el comparecer a testificar y ser confrontado por el acusado.

A la luz de los hechos particulares de este caso, estoy conforme con el desenlace de esta controversia. De esta forma, no se abre la puerta a la declaración de indisponibilidad de testigos en circunstancias como estas, las cuales, aunque sensitivas y lamentables, no alcanzan con certeza el alto estándar de deterioro que conduce a la imposibilidad de comparecer a testificar y, en consecuencia, no pueden servir de fundamento para privar a alguien de sus garantías constitucionales más preciadas."

La Jueza Presidenta Oronoz Rodríguez emite la expresión siguiente, a la cual se une el Juez Asociado señor Colón Pérez:

"Nuestra Constitución y su contraparte federal protegen el derecho fundamental de las personas acusadas de delito, a confrontar y carearse con aquellas personas que testifiquen en su contra. Art. II, Sec. 11 Const. ELA, LPRA, Tomo 1; Emda. VI, Const. EE. UU., LPRA, Tomo 1. A esos efectos, y como norma general, los tribunales no admitirán declaraciones hechas fuera del juicio o vista, que se presenten para aseverar la verdad de lo declarado. Regla 804 de Evidencia, 32 LPRA Ap. VI, R. 804. Ahora bien, la Regla 806 de Evidencia, *supra*, reconoce excepciones a la norma general antes mencionada que, a su vez, están condicionadas a la determinación de no disponibilidad de la persona declarante.

De manera específica, la Regla 806(A), *supra*, define aquellas instancias en las que se entenderá que la persona testigo no está disponible, a saber: (1) está exenta de testificar luego de la determinación del Tribunal sobre el reconocimiento de un privilegio en estas Reglas en relación con el asunto u objeto de su declaración; (2) insiste en no testificar en relación con el asunto u objeto de su declaración a pesar de que el Tribunal le ordenó que así lo hiciera; (3) testifica que no puede recordar sobre el asunto u objeto de su declaración; **(4) al momento del juicio o vista, ha fallecido o está imposibilitada de comparecer a testificar por razón de enfermedad o impedimento mental o físico;** o (5) está ausente de la vista y quien propone la declaración ha desplegado diligencia para conseguir

su comparecencia mediante citación del Tribunal. En lo pertinente, cuando la persona declarante no está disponible y así lo determina el Tribunal, será admisible el testimonio anterior dado como testigo en otra vista en ese u otro procedimiento si la parte contra quien se ofrece tuvo la oportunidad y motivo similar para contrainterrogarlo. 32 LPRA Ap. VI, R. 804.

Nos comenta el tratadista, Prof. Ernesto L. Chiesa Aponte (profesor Chiesa Aponte), que [e]l declarante que ha fallecido al momento de presentarse la declaración está, por supuesto, no disponible para testificar. Pero también lo está cuando su condición de salud, mental o física, **está tan deteriorada que no podrá comparecer en un futuro predecible. Si se trata de un testimonio importante, el tribunal no debe tomar livianamente la determinación de que el declarante no está disponible para testificar. Podría posponerse la vista o dejar para el final su testimonio. <u>Hay que tener especial cautela cuando se trata de un testigo de cargo.</u>** (Negrillas y subrayado suplidos). E. L. Chiesa Aponte, Reglas de Evidencia comentadas, 1ª ed., San Juan, Ed. SITUM, 2016, pág. 325.

En cuanto a la determinación de indisponibilidad al amparo de esta excepción, expresa que se refiere a "un grado considerable de incapacidad física o mental". E.L. Chiesa Aponte, Compendio de Evidencia (En el sistema adversarial), 1ª ed., Ciudad de México, Ed. Tirant Lo Blanch, 2021, pág. 378. Específicamente, detalla que la carga de establecer la no disponibilidad del declarante la tiene el proponente que pretende la admisión de prueba de referencia. Si la condición incapacitante del declarante es seria y probablemente no mejorará, el tribunal debe declararlo "no disponible". Pero, si la condición no es tan seria **y la recuperación es probable, el tribunal puede decretar una posposición o alterar el orden de la prueba para posponer para otro día el testimonio del declarante, si el juicio se va a prolongar por mucho tiempo.** (Negrillas suplidas) <u>Íd.</u>, págs. 378-379.

En ocasiones previas he avalado tanto la declaración de un testigo como no disponible, como la disponibilidad de un testigo. <u>Pueblo v. Pérez Núñez</u>, 208 DPR 511; <u>Pueblo v. Lugo López</u>, 2024 TSPR 83. Sin embargo, ello ha sido a partir de la realidad fáctica que se ha presentado para consideración de este Tribunal. En cada una de esas circunstancias he constatado el contexto en el cual se ha suscitado el dictamen del foro primario, así

como las condiciones que le hacían merecedor de la deferencia de este Foro.

En Pueblo v. Pérez Núñez, *supra*, avalé la comparecencia de un testigo de cargo quien era paciente cardiaco. En el referido caso, el testigo de cargo testificó de manera presencial en la vista preliminar y en la vista preliminar en alzada.

Por su parte, en Pueblo v. López Lugo, *supra*, avalé la no disponibilidad de una víctima de agresión sexual, quien había sido interrogada y contrainterrogada en múltiples ocasiones previas, y a quien le albergaban los derechos consagrados en la *Carta de derechos de las víctimas y testigos de delito*. Ley Núm. 22 de 22 de abril de 1988. Ambas situaciones son distinguibles del caso de autos. En este caso, la Oficina del Procurador General pretende sustituir el testimonio en sala del agente Rosado Hernández por el testimonio prestado por este en la *Vista de supresión de evidencia*,[1] cuyo fin o enfoque es marcadamente distinto al testimonio que se presentaría durante un juicio.

Más allá de esto, como señala el profesor Chiesa Aponte, el tribunal no debe tomar livianamente la determinación de que el declarante no está disponible para testificar. En el caso ante nos, nada apunta que la condición de salud del agente Rosado Hernández vaya en retroceso. Por el contrario, del récord médico surge que si bien tiene una condición crónica este está estable. El testimonio del agente es neurálgico pues este es el testigo de cargo que prestó la declaración jurada sobre la cual descansa la acusación del Estado. Por lo tanto, el acusado tiene el derecho de contrainterrogarlo y la condición del agente no cumple con el rigor que la Regla exige para eximir".

El Juez Asociado señor Rivera García emitió un ***Voto particular disidente***, al cual se le une la Jueza Asociada señora Pabón Charneco, el Juez Asociado Feliberti Cintrón y el Juez Asociado Kolthoff Caraballo.

Javier O. Sepúlveda Rodríguez<br>
Secretario del Tribunal Supremo

---

[1] Del apéndice que presentó la Oficina del Procurador General no surge lo que ocurrió en la vista sobre causa para arresto ni en la vista preliminar.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Luis Ángel Suárez Robles<br><br>Recurrido | CC-2024-0617 | |

**Voto Particular Disidente emitido por el Juez Asociado señor Rivera García, al cual se le une la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Feliberti Cintrón.**

En San Juan, Puerto Rico, a 28 de octubre de 2024.

No puedo permanecer silente ante la inacción de varios compañeros para atender lo que a todas luces fue una afrenta del Tribunal de Apelaciones a los principios más básicos de revisión judicial.

Algunos de ellos, escudados detrás de un infundado diagnóstico médico ——*ausente de prueba pericial que lo sustente*—— van tan lejos como para concluir que la salud de cierto testigo no es tan frágil como concluyó el foro primario. De esta forma, lamentablemente, olvidan nuestro sitial como jueces de revisión y actúan **cual si fueran "*Cardiólogos Togados*"**.

Otros, se amparan en una <u>inaplicable figura de la totalidad de las circunstancias y en detalles que solo reflejan desconocimiento y total desconexión</u> de las realidades de los procedimientos criminales a nivel de primera instancia.

Estos compañeros otorgan cero deferencia a la determinación del foro primario bajo el errado pretexto de que <u>todo</u> testimonio pericial puede ser sustituido y descartado por un tribunal revisor porque, presuntamente, se encuentra en la misma posición. **Tal parece que ignoran las diferencias entre la figura de un perito general y la de un <u>perito de ocurrencia</u>, así como las implicaciones que tienen sus testimonios.**

Ante ello, levanto mi voz y señalo con ahínco que la determinación que hoy se refrenda, por virtud de un empate en la votación, brilla por ser <u>**errada en derecho y**, además, **carente de empatía**</u>.

La controversia planteada era la siguiente: ¿Puede catalogarse un testigo del Ministerio Público como uno *no disponible* por razones de enfermedad física? <u>La contestación era en la afirmativa</u>, como correctamente concluyó la Jueza Superior Glendaliz Morales Correa en su **extensa y fundamentada *Resolución*.**

No obstante, el Tribunal de Apelaciones, <u>en su afán de posicionarse en el mismo lugar que los adjudicadores de instancia</u>, y a través de una raquítica *Resolución* en la que dedicó solo tres (3) oraciones del último párrafo a la aplicación de sus fundamentos jurídicos, revocó y sustituyó el criterio del foro de instancia y de la prueba médico pericial, por el suyo propio. **<u>Me resulta lamentable que subsista tal determinación</u>.**

Veamos los hechos.

## I.

El pasado 24 de junio de 2021, el Ministerio Público radicó varias denuncias contra el Sr. Luis A. Suárez Robles (recurrido o señor Suárez Robles) por infracciones a la *Ley de sustancias controladas* y la *Ley de Armas de Puerto Rico*.[1] Luego de superar los trámites preliminares del procedimiento criminal, el Tribunal de Primera Instancia señaló el comienzo del juicio en su fondo para el 14 de diciembre de 2021. Posteriormente, se suscitaron varios pormenores que incluyeron una solicitud de supresión de evidencia, su correspondiente vista y varios trámites apelativos, los cuales fueron adjudicados ──en su totalidad── a favor del Estado. Cabe destacar que el testigo en controversia, el Agte. Ángel R. Rosado Hernández (agente Rosado Hernández), declaró en las vistas antes mencionadas **y estuvo sujeto a contrainterrogatorio**.

Debido a lo anterior, el juicio fue reseñalado para comenzar el 30 de octubre de 2023. Sin embargo, el Ministerio Público presentó una moción en la que solicitó la sustitución del testimonio de uno de sus testigos, concretamente el agente Rosado Hernández, por razón de que éste presenta un panorama delicado de salud que le impedía someterse a situaciones de alto estrés. Lo anterior, pues el agente **padece de serias condiciones cardiacas y pulmonares, y su**

---

[1] 24 LPRA sec. 2401 y 25 LPRA secs. 466g y 466u, respectivamente.

**cuadro clínico general, era vulnerable**. En respuesta, el señor Suárez Robles se opuso al petitorio.

Trabada así la controversia, el tribunal primario celebró una vista evidenciaría, en la que el Ministerio Público presentó el testimonio (1) del Dr. César Cruz García (doctor Cruz García); (2) del Sgto. Gamalier Delgado Santiago (sargento Delgado Santiago), y (3) del Tnte. Alex Santiago Pérez (teniente Santiago Pérez). **De la misma forma, se presentó como evidencia el expediente médico del agente**.

Del testimonio del doctor Cruz García, **quien es el _cardiólogo de cabecera del testigo_**, se desprende que el agente Rosado Hernández sufre de las siguientes condiciones de salud:

i.   **enfermedad coronaria**, la cual ocurre cuando las arterias que suministran sangre al músculo cardíaco se endurecen y se estrechan;

ii.  **hipertensión pulmonar severa Tipo 2**, lo que produce que el corazón pierda la capacidad de bombear sangre al pulmón;

iii. **_bypass_ coronario**;

iv.  **problemas en varias arterias pulmonares**;

v.   **hipertensión arterial severa y descontrolada**;

vi.  que fue **operado de corazón abierto**;

vii. **angina de pecho**;

viii. que toma **sobre cinco (5) medicamentos** para tratar de controlar su presión arterial

ix.  **hiperlipidemia**, que representa la presencia de niveles elevados de colesterol en la sangre;

x.   **asma bronquial**

xi.  apnea del sueño;

xii.   obesidad[2]

Asimismo, el galeno detalló el hecho de que los estudios clínicos del testigo reflejaban niveles muy por encima de los aceptados. También, se expresó sobre los procedimientos de cateterismos que le realizó y de los tratamientos combinados que le brinda al agente junto con otros especialistas, como por ejemplo, un neumólogo. De igual forma, surgió que **durante el mes anterior a la vista evidenciaria**, el agente Rosado Hernández **tuvo dos (2) hospitalizaciones**, una en Arecibo y una en Ponce, por los mismos problemas cardiacos y pulmonares.[3]

**Respecto a los posibles riesgos que enfrenta el agente Rosado Hernández, el médico relató que exponer al uniformado a una situación de estrés puede provocarle "_un infarto al miocardio_".**[4] En igual sentido, señaló que el tratamiento que se la ha brindado al policía es para tratar de **_estabilizar su condición, no para sanarla, porque ello es imposible_**. En ese sentido, concluyó que aun si se lograra estabilizar la condición del agente, cualquier evento, por simple que fuera, aumentaría sus niveles de estresores y exacerbaría sus condiciones con el posible resultado antes indicado.

Por otro lado, en lo que respecta a los testimonios del sargento Delgado Santiago y el teniente Santiago Pérez, supervisores del testigo, surgió que el agente Rosado Hernández fue **relegado a funciones puramente administrativas,**

---

[2] Vease Apéndice del Certiorari, _Resolución_ del Tribunal de Primera Instancia, págs. 44-57.
[3] Íd., págs. 45-54.
[4] Íd, pág. 49.

tales como sacar copias o ayudar a una agente administrativa. Surgió, además, que **no atendía público ni gestionaba las declaraciones juradas de la unidad**, todo lo anterior por **recomendación médica**.

Finalmente, se detalló que **pasaba mucho tiempo fuera de la oficina por enfermedad, y que, de hecho, para la fecha de la vista evidenciaria, se encontraba fuera por un percance médico** y **que no se sabía cuándo regresaría**.

Luego de los testimonios antes reseñados, culminó la prueba ofrecida por el Ministerio Público. **Hay que destacar, además, que a pesar de que la defensa acudió a la vista con un perito médico, decidió no presentarlo** como testigo y dar el asunto por sometido.[5]

Luego de recibir la prueba, el Tribunal de Primera Instancia emitió una **fundamentada Resolución ——*la cual contiene 36 páginas*——** en la que declaró *con lugar* la solicitud del Ministerio Público y declaró al Agente Rosado Hernández como testigo no disponible, por lo que se autorizó la sustitución de su testimonio por el vertido en la vista de supresión de evidencia, donde fue objeto de contrainterrogatorio por la defensa.

Insatisfecho, el señor Suárez Robles acudió ante el Tribunal de Apelaciones e impugnó la determinación del foro primario. El 27 de junio de 2024, el foro intermedio emitió

---

[5] Íd, pág. 44.

una *Resolución* en la que revocó al tribunal revisado. La escueta razón que dio el foro *a quo* fue que

> "a pesar de la reciente hospitalización del testigo, el expediente **_demuestra un patrón general de mejoramiento en su salud_**. Además, el Agte. Rosado Hernández es testigo de cargo y el foro primario puede posponer o dejar para el final la vista de su testimonio".

No obstante, la Juez Brignoni Martir, emitió un voto disidente en el que, en esencia, expresó que luego de evaluar

> "*la contundente prueba documental, incluyendo el récord médico del testigo, la prueba testifical y pericial que justipreció el foro primario, no encuentro los elementos requeridos para determinar que éste actuó de forma arbitraria, caprichosa, o incurrió en un craso abuso de discreción*".[6]

Por ello, razonó que procedía otorgarle completa deferencia a la determinación del foro de instancia.

Inconforme, el Procurador General acudió ante este Tribunal mediante un recurso de *Certiorari* presentado el pasado 7 de octubre de 2024. Ahora bien, dada la cercanía del juicio, presentó una solicitud de auxilio de jurisdicción el 23 de octubre de 2024.

Esbozados los hechos medulares del asunto, debo particularizar sobre varios asuntos que nos traen a consideración.

**II.**

**i. Estándar de revisión de la prueba pericial**

---

[6] *Pueblo v. Suárez Robles*, KLCE202400575, 5 (2024) (WL3408098).

La norma establecida en Puerto Rico dicta que un tribunal revisor se encuentra en la misma posición que un tribunal sentenciador al momento de evaluar la prueba pericial.

No obstante, la sustancia de esta norma dista mucho de la aparente facilidad con la que algunos la aplican. Como en todo pleito, dicha norma debe ser aplicada desde una perspectiva ajustada a los hechos del caso.

Quien argumente a favor de esta aseveración **debe tener en cuenta que existen varios tipos de peritos y que <u>es una irresponsabilidad concluir que todo testimonio pericial puede ser descartado, sin más</u>**.

Los **peritos de ocurrencia** (occurrence experts), <u>como lo es el doctor Cruz García</u>, son aquellos que tienen **conocimiento directo y personal de los hechos <u>porque presenciaron y participaron activamente en los hechos que dieron paso al litigio</u>**.

Por ello, en el normativo caso <u>San Lorenzo Trad., Inc. v. Hernández</u>, 114 DPR 704 (1983) reconocimos que este tipo de peritos "<u>son personas que han tenido percepción inmediata de los hechos y, como tales</u>, **poseen información irreemplazable**". (Énfasis suplido)

**<u>La diferencia entre un perito general y uno de ocurrencia es sencilla</u>**: El general se limita a ofrecer información técnica sin haber estado involucrado en los hechos del caso y **el perito de ocurrencia participó en los**

**hechos, como un sujeto activo previo al litigio**. Es decir, es el testimonio de alguien que intervino, personalmente, en los hechos que provocaron la controversia. **Ahí radica la razón de por qué el testimonio de un perito general es descartable en su totalidad y <u>el de uno de ocurrencia es irremplazable</u>**.

Como expresamos en <u>San Lorenzo Trad., Inc. v. Hernández</u>, *supra*, "nos hallamos [ante] una **doble actividad probatoria de una misma persona: actividad testifical y actividad pericial. <u>Una misma persona actúa como testigo y perito</u>**, a través del procedimiento de la prueba de testigos". (Énfasis suplido)

El doctor Cruz García testificó en un rol dual, es decir, en su calidad de cardiólogo interventor del agente Rosado Hernández y como especialista en medicina cardiovascular. En ese sentido, este proveyó información que le consta de personal y propio conocimiento, y, por ende, **<u>esa información es irreemplazable o, al menos, merece gran deferencia por parte de los foros apelativos</u>**.

Me resulta un sinsentido despachar el criterio del tribunal primario cuando **<u>el testimonio del testigo-perito no fue refutado por nadie</u>**, pues la defensa llevó un testigo a esos efectos, pero decidió no sentarlo. Es decir, esta persona, ***<u>además de ser el cardiólogo habitual del testigo</u>***, **<u>fue el *único* que habló sobre las condiciones de salud del agente y la manera en que él le trata sus aflicciones, las cuales son, precisamente, la médula de la controversia respecto a su disponibilidad</u>**.

Quizás pudiera comprender la posición de algunos compañeros si, al menos, la defensa hubiera presentado aunque fuese una pizca de prueba que contradijera o refutara el testimonio de aquella persona que ha intervenido con la salud del testigo por los pasados años.

A fin de cuentas, como reconocimos en, <u>Boitel Santana v. Cruz y otros</u>, 129 DPR 725, 731 (1999), "***<u>a los testigos de ocurrencia se les considera como un testigo ordinario</u>***" **junto con todos los efectos que ello produzca.** (Énfasis suplido). **<u>Uno de esos efectos, es la deferencia judicial que se le debe al juzgador de hechos</u>, aunque algunos no lo quieran aceptar.**

**ii. Sustitución de criterio**

Partiendo de la conclusión alcanzada en el acápite anterior, conviene recordar las palabras de la Jueza Presidenta Oronoz Rodríguez en sus expresiones emitidas en <u>Pueblo v. Pérez Núñez</u>, 208 DPR 511, 513 (2022) cuando sentenció fehacientemente que "***<u>este Foro no puede caer en la tentación de sustituir el criterio médico creído en el Tribunal de Primera Instancia</u> para llegar a una conclusión predeterminada***". (Énfasis suplido).

Asimismo, en <u>Cruz Flores v. Hospital Ryder Memorial Inc.</u>, 210 DPR 465, 513 (2022), un caso sobre mala práctica en la medicina, y en el cual la prueba pericial fue extremadamente amplia (***se presentaron peritos de ambas partes***), nuestra presidenta **<u>reconoció</u>** en su voto particular que "***<u>[e]l foro primario estaba en mejor posición de aquilatar</u>***

***la prueba*** *y analizar la controversia con la prueba documental, testifical y* ***pericial que se presentó en el juicio***". (Énfasis suplido).

De hecho, recientemente, en <u>Pueblo v. Lugo López</u>, 2024 TSPR 83 (2024) la compañera avalaba la designación como testigo no disponible de una menor fundamentada, entre otras cosas, por "la ***gravedad de su estado físico***" y porque "***los profesionales de la salud que la atendieron advirtieron que no recomendaban que continuara testificando, pues las consecuencias podían ser sustancialmente nefastas***".[7] (Énfasis suplido).

Precisamente, **este caso reúne las mismas características que comentaba la compañera hace unos meses**. Contamos con un diagnóstico poco alentador —*irrefutado*—, un estado de salud sumamente deteriorado y, además, con una recomendación médica —*incontrovertida*— de que no testifique por los riesgos que esto le puede causar a su salud. Lamentablemente, hoy, ella y otros compañeros deciden tomar un curso de acción diferente. **Requerimos consistencia**.

Por su parte, y en igual ocasión, el compañero Juez Asociado señor Martínez Torres, expresó que

> "Ante la ausencia de prejuicio, parcialidad, abuso de discreción o error manifiesto en la determinación emitida por el Tribunal de Apelaciones, **considero innecesario intervenir con su dictamen. Recordemos que debemos guardar gran deferencia a las facultades discrecionales de los foros primarios y solamente intervenir cuando ello**

---

[7] *Opinión disidente* de la Jueza Presidenta Oronoz Rodríguez en *Pueblo v. Lugo López*, 2024 TSPR 83, 31 (2024).

**<u>sea necesario para evitar un fracaso de la
justicia</u>**.[8] (Énfasis suplido).

Ciertamente, si requerimos consistencia judicial, en
este caso deberíamos haber avalado dicha postura y haber
respetado la deferencia que se merece el Tribunal de Primera
Instancia.

Repito una vez más, ante hechos similares la justicia
debe concluir a una sola dirección.

Es norma conocida en nuestro ordenamiento jurídico que,
**ante la ausencia de error manifiesto, prejuicio, parcialidad
o pasión, <u>los tribunales apelativos no debemos intervenir</u>**
para revisar la apreciación de la prueba, la adjudicación de
credibilidad o las determinaciones de hechos formuladas por
el Tribunal de Primera Instancia.[9] Así, pues, sólo ante la
presencia de estos elementos y/o cuando la apreciación de la
prueba no concuerde con la realidad fáctica o ésta sea
inherentemente imposible o increíble, es que procede la
intervención con la apreciación efectuada.

En ese sentido, "la tarea de adjudicar credibilidad y
determinar lo que ocurrió depende, en gran medida, de la
exposición del juez o la jueza a la prueba presentada, lo
cual incluye, entre otros factores, ver el comportamiento del
testigo mientras ofrece su testimonio y escuchar su
voz".[10] Es por ello que la deferencia judicial está predicada
en que los jueces de las salas de instancia están en mejor

---

[8] Íd., pág. 15.
[9] *Ortíz Ortíz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759,
778 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219.
[10] Íd.

posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo.

Resulta un hecho incuestionable que **a la juzgadora** del tribunal primario **le mereció completa credibilidad el testimonio pericial que ofreció el doctor Cruz García, quien declaró como testigo-perito, en cuanto a la fragilidad de la salud del agente Rosado Hernández al momento presente**. De hecho, la prueba presentada y aquilatada por el tribunal de instancia fue catalogada como "**competente y confiable**" por la propia Jueza en su fundamentada *Resolución* de 36 páginas. Asimismo, concluyó que la condición de salud del testigo es **crónica, severa, permanente y no tiene posibilidad de cura**. Al adentrarnos en el expediente, se puede constatar fácilmente todo lo anterior.

A pesar de lo anterior, **el tribunal apelativo sucumbió ante la tentación de sustituir el criterio médico creído por el Tribunal de Primera Instancia para llegar a una conclusión propia, enajenada de toda la prueba vertida en sala y en total ausencia de las herramientas y el conocimiento técnico necesario para revertir lo decidido**.

Resulta en un gravísimo error sustituir el criterio médico —*extensamente argumentado en la vista*— por un razonamiento que raya en la arbitrariedad y se aleja del rigor jurídico que merece una situación como la de autos. Basta con examinar los fundamentos que utilizó el tribunal apelativo, los cuales se limitan a solo tres (3) oraciones en

el párrafo final de su *Resolución*, para comprender lo errado de la decisión de dicho foro.

**iii. Consideraciones finales**

Este caso nos presentaba una oportunidad idónea para adentrarnos en la norma que establecimos recientemente en Pueblo v. Lugo López, *supra*, y expandir los horizontes que allí pautamos.

Por otra parte, de no haber querido adentrarnos en la discusión sustantiva del caso, bien pudimos atenderlo para corregir tan indebida intromisión del foro intermedio. **Los hechos particulares así lo exigían**.

Ciertos cuestionamientos han surgido respecto a que el agente Rosado Hernández lleva casi 30 años de servicio, por lo que testificar no debe suponer una situación de extraordinario estrés. En igual sentido, se ha llegado a cuestionar el hecho de que el testigo continúa laborando, por lo cual demuestra no estar tan grave como se ha sugerido.

En primer lugar, resulta totalmente impertinente la cantidad de años que el testigo haya trabajado en la Policía. Este puede haber laborado durante 30, 40 o 50 años y el ordenamiento jurídico vigente exige que la determinación de no disponibilidad **se haga al momento preciso en que va a declarar el testigo**. La prueba presentada y creída por el Tribunal estableció que las múltiples condiciones médicas del agente hacían sumamente riesgoso que éste declarara, pues su vida podía estar en juego.

En segundo lugar, igual de impertinente resulta la experiencia que haya tenido el agente declarando. **Dada mi trayectoria como Fiscal y como Juez Superior que presidí salas criminales de delitos graves, doy fe de que testificar en cualquier procedimiento criminal, indistintamente de la persona que sea, representa un acto que genera diferentes grados o niveles de estrés** al exponerse a los rigores de un examen directo y sus contrainterrogatorios. **Eso no me lo cuenta nadie, eso yo lo he vivido personalmente**.

Añádasele a ello, la realidad irrefutable de que en ese momento, no en uno anterior, el declarante se encuentre afligido por una condición que se agrava por el estrés.

Nadie, en lo absoluto, puede controlar la forma y manera en que un testigo maneja o reacciona a situaciones de estrés. En este caso, la prueba médica, la cual reiteramos no fue refutada por la defensa, demostró que cualquier variación de los niveles estresores del agente Rosado Hernández podría catapultar sus condiciones y producirle la muerte. Ninguna persona desde un estrado puede decidir como reaccionará el testigo con las condiciones que el de este caso presenta; ninguna. Hace 15 o 20 años se hubiese podido comportar de una forma, pero la situación actual cambió, y su realidad física también.

De hecho, el testigo **continúa laborando en una capacidad extremadamente limitada** dentro de la uniformada, al punto que fue relegado a gestiones puramente administrativas por recomendación médica. De estar investigando en el campo, pasó

a sacar copias detrás de un escritorio. Esto no fue capricho, fue una recomendación clínica para evitar cualquier tipo de situación que empeorara la salud del agente. Así lo declararon dos agentes supervisores y así lo creyó el Tribunal. Hacer cualquier alusión a que si éste aún labora, es porque tiene la capacidad para declarar, puede rayar en lo arbitrario.

**III.**

En fin, luego de estudiar detenidamente el expediente en controversia, no tengo dudas de lo incorrecto que fue el proceder del Tribunal de Apelaciones al revocar la determinación del Tribunal de Primera Instancia.

Coincido con lo expresado por la Jueza Brignoni Mártir en su voto disidente respecto a que la prueba presentada por el Ministerio Público fue contundente y que lo procedente era otorgarle completa deferencia a la apreciación del tribunal primario —*por los fundamentos que aquí expresé*— toda vez que no hubo ni un ápice de prueba que mostrara que dicho foro actuó de forma arbitraria, caprichosa, o incurrió en un error manifiesto. El dictamen de instancia cumplió con todos los requisitos para declarar al testigo como uno no disponible y se ajusta a nuestro más reciente pronunciamiento sobre ese particular en Pueblo v. Lugo López, *supra*.

Lamentablemente, el próximo miércoles comenzará el juicio en este caso, y la integridad física de lo que

posiblemente es el testigo más importante en este caso queda a la suerte debido a la inacción de algunos compañeros.

**El récord de mi trayectoria es claro en cuanto a la importancia que tiene para mí la preservación de la vida, sin distinción de persona**. Por ello, no puedo avalar jamás, una determinación que obliga a un testigo a declarar cuando existe una alta probabilidad de que pierda la vida. **No puedo hablar por nadie, pero en mi caso, mi conciencia permanece tranquila**.

                                    Edgardo Rivera García
                                        Juez Asociado